The PEOPLE of the State of
Colorado, Complainant,

v.

Gregory Allen KEARNS, Attorney–
Respondent.

No. 92SA119.

Supreme Court of Colorado,
En Banc.

Oct. 13, 1992.

Linda Donnelly, Disciplinary Counsel, Sandra J. Pfaff, Asst. Disciplinary Counsel, Denver, for complainant.

Alex Stephen Keller, Denver, for attorney-respondent.

PER CURIAM.

A hearing panel of the Supreme Court Grievance Committee approved the findings of a hearing board in this attorney discipline proceeding. The panel recommended that the respondent be suspended from the practice of law for one year and one day, pay restitution in the amount of $99,000, and be assessed the costs of the proceeding. The assistant disciplinary counsel has excepted to the recommended discipline as too lenient. After consideration of the record and the seriousness of the respondent's professional misconduct, we accept the recommendation of the panel.

I.

The respondent was admitted to the bar of this court on June 4, 1976, is registered as an attorney upon this court's official records, and is subject to the jurisdiction of this court and its grievance committee. C.R.C.P. 241.1(b). Because of the allegations that are the subject of this proceeding, we placed the respondent under immediate suspension pending further order of this court on December 20, 1990. *People v. Kearns*, No. 90SA293 (Colo. Dec. 20, 1990).

The formal complaint filed by the assistant disciplinary counsel contained two counts. Count I charged the respondent with violations of DR 1–102(A)(1) (a lawyer shall not violate a disciplinary rule), DR 1–102(A)(4) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation), C.R.C.P. 241.6(3) (misconduct involving any act or omission violating the highest standards of honesty, justice or morality is grounds for discipline), and C.R.C.P. 241.6(5) (any act or omission violating the criminal laws of a state or of the United States constitutes ground for lawyer discipline). Seeking to apply the doctrine of nonmutual offensive collateral estoppel, the assistant disciplinary counsel moved for partial summary judgment on Count I based upon a final district court judgment rendered against the respondent in a previous civil action. The assistant disciplinary counsel's motion was granted and the respondent was found to have violated DR 1–102(A)(4) with respect to the transactions described in Count I of the complaint.[1] The respondent has

---

1. The motion for partial summary judgment addressed only the violation of DR 1–102(A)(4), and the remaining charges contained in Count I were eventually dismissed.

not objected in this court to the application of nonmutual offensive collateral estoppel under the circumstances of this case. *See People v. Tucker,* 837 P.2d 1225, 1228–1229 (Colo.1992) (application of nonmutual offensive collateral estoppel in attorney discipline proceeding arising from a previous final district court judgment finding attorney-respondent in criminal contempt was not error).

Count II of the complaint alleged that the respondent failed to respond in a timely manner to the request for investigation, contrary to C.R.C.P. 241.6(7) (failure to respond to a request by the grievance committee without good cause shown, or obstruction of the committee or any part thereof in the performance of its duties constitutes ground for lawyer discipline). In his answer to the formal complaint, the respondent did not deny the allegations of Count II, and the allegations were deemed admitted. C.R.C.P. 8(d).

Based upon the foregoing, and upon the evidence presented at a hearing for the purpose of determining the appropriate disciplinary sanction, the hearing board concluded that the following facts had been established by clear and convincing evidence.

## II.

## A.

In the summer or fall of 1988, the respondent and Donald B. Wingerter, Jr., were attempting to form a business organization in the medical sales field, to be called Janus Group, Ltd. The two were seeking funds to capitalize the business and the respondent told Wingerter of an opportunity to earn $25,000 by loaning $100,000 on a short term basis to a mortgage company, Gibraltar Mortgage and Investment Company, for use in a real estate transaction. The respondent did not have the cash to lend the money himself.

Wingerter told his father, Donald B. Wingerter, Sr., about the investment opportunity, and the father, spoke to the respondent. Donald B. Wingerter, Sr., was retired. The respondent represented to the father that the money would not be at risk if he loaned the $100,000, that Wingerter would earn the $25,000 "fee" if the transaction closed, and that the closing would be held within days after the loan was made. Although he assured Donald B. Wingerter, Sr., that the transaction was safe, the respondent testified in a deposition that he knew virtually nothing of the mechanics of the proposed transaction, except that it involved real estate in California and out-of-state investors. While the respondent testified that he received no fee or other consideration from Wingerter, Sr., or Gibraltar Mortgage, for inducing Wingerter to loan the $100,000, the respondent anticipated that upon the completion of the transaction, Wingerter, Sr., would allow the $125,-000 to be used as collateral to capitalize Janus Group, Ltd.

Relying upon the respondent's representations that the transaction posed no risk to his $100,000, on October 31, 1988, Wingerter, Sr., withdrew $100,000 of the $136,000 in his retirement trust account and gave the respondent a certified check made payable to the respondent. He informed the respondent that the funds were from his retirement trust account. Using this check, the respondent obtained a second certified check for $100,000, payable to Gibraltar Mortgage. The respondent gave Wingerter, Sr., an unsecured promissory note on behalf of F. Scott Wood & Company, signed by the respondent both as president of the company, and as an individual. F. Scott Wood & Company was wholly owned and operated by the respondent. The note promised that Wingerter would be paid $100,000 plus 10% interest on the due date of November 11, 1988, which was twelve days after the note was given. The respondent also gave Wingerter, Sr., an undated letter, stating, "This is confirmation that the $25,000 consulting fee to be paid to my company at the conclusion of this financing transaction will be paid to you." The letter was signed by the respondent as president of F. Scott Wood & Company.

The respondent gave the $100,000 certified check to Donald Lopez, president of

Gibraltar Mortgage. In return, the respondent received a promissory note from Gibraltar Mortgage, signed by Lopez as president. The Gibraltar Mortgage note promised to pay F. Scott Wood & Company $125,000 by November 11, 1988. The promissory note was unsecured, and the respondent did not attempt to obtain any security for the loan before turning the $100,000 over to Lopez. The record does not reveal what happened to the $100,000 after the respondent handed the check to Lopez, but the respondent testified that he has not received any of the money back from Lopez or Gibraltar Mortgage, and that the promissory note given to his company by Gibraltar Mortgage has not been paid.

The respondent failed to pay Wingerter, Sr., the $100,000 principal, the $25,000 fee, or any interest, despite repeated requests from the Wingerters. In late December 1988, the respondent gave Wingerter, Sr., a post-dated check for $100,000, drawn on the respondent's professional trust account. By letter, he told Wingerter that there were at present insufficient funds in the trust account to cover the check, but that he would inform Wingerter as soon as the money was available. On December 31, 1988, Wingerter, Sr., called the respondent and asked if he could cash the check, and the respondent misrepresented that there were sufficient funds in the trust account to cover the check. In fact, there was approximately $20 in the trust account, and the $100,000 check failed to clear.

Believing the check was good, Donald B. Wingerter, Sr., deposited it into his account, and purchased a certificate of deposit in the amount of $100,000, to be used as collateral for loans to be made to his son's business. When the respondent's check failed to clear, the certificate of deposit became invalid, and the funds that Donald B. Wingerter, Jr., thought were available to him were not. As a result, several checks written by Donald B. Wingerter, Jr., did not clear. When Wingerter told the respondent's wife about the problem, she gave him $22,000 to cover Wingerter, Jr.'s checks, and as a contribution to the capitalization of the business.

Although the respondent has testified that the promissory note from Gibraltar Mortgage has not been paid, he assigned the note to a third party, along with other collateral, for $5,000 or $25,000, and he kept the proceeds.[2] The respondent assigned the note without the knowledge or consent of Wingerter, Sr.

Wingerter, Sr., filed suit against the respondent in Jefferson County District Court on the promissory note, on the bad check, and for fraud. Although he filed an answer to the complaint, and testified at a deposition, the respondent decided not to appear at the trial, believing bankruptcy court to be a more favorable forum. After the presentation of the plaintiffs' evidence at the bench trial, the district court found fraud on the part of the respondent in inducing Wingerter, Sr., to make the loan. The court also concluded that there was fraud in the presentment of the insufficient check. The court further found that "the whole of this transaction was attended by circumstances of fraud beyond a reasonable doubt."

The district court entered judgment in favor of Donald B. Wingerter and the Donald B. Wingerter Retirement Trust against the respondent in the amount of $115,000 actual damages; $16,821 in interest; $200,000 under the provisions of section 13–21–102, 6A C.R.S. (1987) (exemplary damages for fraud), and section 13–21–109, 6A C.R.S. (1992 Supp.) (recovery of three times the face value of unpaid check); plus attorney's fees and costs in the amount of $8,860; for a total judgment of $340,681. The judgment has not been paid, although the respondent made one payment of $1,000 to Wingerter, Sr.

---

2. The hearing board found that the respondent assigned the note to a third party for $5,000. The respondent has pointed out that the record shows only that the promissory note was assigned along with other collateral for $5,000. We note that the respondent testified before the board that the assignment was for $25,000, not $5,000.

## B.

Regarding Count II of the complaint, the board found that the respondent did not timely reply to the request for investigation filed in this matter. The request was sent to the respondent at his Colorado address on May 23, 1990. The respondent had moved to Florida and did not notify this court of his change of address. On July 14, 1990, the respondent wrote the Office of Disciplinary Counsel that his only address was a post office box in Texas. He indicated that he had just received the request for investigation and that he would promptly respond. He eventually replied to the request for investigation.

## III.

With respect to Count I, the hearing board found that the respondent violated DR 1–102(A)(4) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation). This finding followed from the partial summary judgment entered against the respondent because he was precluded from relitigating the previous findings of fraud contained in the ruling of the Jefferson County district court. The record in this case fully supports the determination that the respondent's conduct in the transaction with Donald B. Wingerter, Sr., violated DR 1–102(A)(4). The respondent assured Wingerter that the transaction posed no risk to the return of his $100,000, which the respondent was informed was taken from Wingerter's retirement account. The respondent gave these assurances in order to induce Wingerter to proceed with the loan despite the fact that the respondent knew next to nothing about what was to be done with the $100,000 once it was given to Gibraltar Mortgage, and had no reasonable basis to conclude that the transaction would be without risk. *See People v. Rader*, 822 P.2d 950, 953 (Colo.1992) (element of scienter necessary for violation of DR 1–102(A)(4) established when attorney deliberately closes his eyes to facts that he had a duty to see, or has recklessly stated as facts things of which he was ignorant).

Further, the respondent violated DR 1–102(A)(4) when he misrepresented to Wingerter that there were sufficient funds in his trust account to cover the bad check he had given Wingerter. Moreover, the respondent acted dishonestly when he assigned the promissory note he received from Gibraltar Mortgage and kept the proceeds without Wingerter's knowledge or consent. Under the facts of this case, the respondent must be deemed to have held Gibraltar Mortgage's promissory note in trust for the benefit of Wingerter and the respondent's assignment of the note therefore constituted conversion.

Finally, the hearing board correctly concluded with respect to Count II that the respondent's failure to reply in a timely manner to the request for investigation violated C.R.C.P. 241.6(7).

## IV.

The hearing panel unanimously approved the board's recommendation that the respondent be suspended for one year and one day, pay restitution to Donald B. Wingerter, Sr., in the amount of $99,000, and be assessed costs. The assistant disciplinary counsel has excepted to this recommendation as too lenient. Although the hearing panel's recommendation is entitled to deference, it is advisory only and we must assess independently the proper level of discipline. *People v. Dieters*, 825 P.2d 478, 481 (Colo.1992).

Under the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1986 & Supp.1992) (ABA *Standards*), in the absence of aggravating or mitigating factors, disbarment is generally warranted when "a lawyer engages in ... intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice." ABA *Standards* 5.11. Similarly, "[d]isbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client." *ABA Standards* 4.11. Further, "[d]isbarment is generally appropriate when a lawyer knowingly deceives a client with the intent to benefit the

lawyer or another, and causes serious injury or potentially serious injury to a client." *Id.* at 4.61.

On the other hand, suspension is appropriate when a lawyer knowingly deceives a client and causes injury or potential injury to the client, *id.* at 4.62. Finally, public censure "is generally appropriate when a lawyer knowingly engages in ... conduct that involves dishonesty, fraud, deceit, or misrepresentation and that adversely reflects on the lawyer's fitness to practice law." *Id.* at 5.13.

We have said that "[t]hievery and deception on the part of a lawyer corrupt and betray the relationships between lawyer and client and between the legal profession and the public. Thus, disbarment of the dishonest lawyer is usually appropriate." *People v. Margolin,* 820 P.2d 347, 349 (Colo.1991). We conclude, however, that the respondent's misconduct in this case is somewhat less egregious than the intentional and knowing conversion and deception present in those cases in which disbarment is virtually automatic. *See, e.g., People v. Finesilver,* 826 P.2d 1256, 1258 (Colo. 1992) (conversion of trust funds and forging of court document warrants disbarment); *People v. Whitcomb,* 819 P.2d 493 (Colo.1991) (conversion of trust funds warrants disbarment); *People v. Kramer,* 819 P.2d 77 (Colo.1991) (lawyer disbarred for obtaining loans by means of false and fictitious "investment plans"); *People v. Mulligan,* 817 P.2d 1028 (Colo.1991) (attorney disbarred for conversion of client funds); *People v. Calt,* 817 P.2d 969 (Colo.1991) (assisting client in fraudulent scheme to obtain funds from the client's employer warrants disbarment of the lawyer); *People v. Grossenbach,* 814 P.2d 810 (Colo. 1991) (conversion of client funds and knowing deception of clients warrants disbarment). If, as the hearing board found, the respondent's motivation for inducing Wingerter to make the loan was the expectation that Wingerter would permit the use of the anticipated $125,000 for collateral to capitalize the medical sales business, the respondent could not have actually known or intended that Wingerter lose the $100,000 principal.

In *Rader,* 822 P.2d 950, we suspended the attorney-respondent for three months for making a number of misrepresentations with at least a reckless disregard for their truth and falsity, contrary to DR 1-102(A)(4). The respondent's conduct in this case is more serious than that in *Rader,* however, because of the respondent's knowing misrepresentation that the check drawn on his trust account was good, and his assignment of the Gibraltar Mortgage promissory note without Wingerter's knowledge or consent.

In aggravation, the hearing board was especially concerned with the harm suffered by Donald B. Wingerter, Sr. *See* ABA *Standards* 9.22(h). The hearing board also found in mitigation that the respondent has no prior history of discipline, *id.* at 9.32(a), that once the respondent became aware of the proceedings he cooperated with the grievance committee, *id.* at 9.32(e), and that this case involves a single transaction.

Considering that almost two years have elapsed since the respondent was suspended under C.R.C.P. 241.8, and that the respondent must make restitution to Donald B. Wingerter, Sr., prior to applying for reinstatement, we conclude that a suspension of a year and a day is appropriate. Accordingly, we accept the recommendation of the hearing panel.

## V.

It is hereby ordered that Gregory Allen Kearns be suspended from the practice of law for one year and one day, effective immediately upon the issuance of this opinion. *See* C.R.C.P. 241.21(a). It is also ordered that Kearns must comply with C.R.C.P. 241.22(b)-(d) before he may be reinstated. It is further ordered that, prior to applying for reinstatement and as a condition thereto, Kearns must pay restitution to Donald B. Wingerter, Sr., in the amount of $99,000 plus interest at the statutory rate from October 31, 1988, until paid. It is further ordered that Kearns pay the costs of this proceeding in the amount of $1,405.08 within thirty days after the an-

**6**

nouncement of this opinion to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 500–S, Dominion Plaza, Denver, Colorado 80202.