The PEOPLE of the State of
Colorado, Complainant,

v.

Bruce Jeffrey WECHSLER,
Attorney–Respondent.

No. 92SA471.

Supreme Court of Colorado,
En Banc.

June 14, 1993.

Linda Donnelly, Disciplinary Counsel, James C. Coyle, Asst. Disciplinary Counsel, Denver, for complainant.

Michael D. Gross, Colorado Springs, for attorney-respondent.

PER CURIAM.

The respondent in this attorney disciplinary proceeding was charged with professional misconduct in two separate matters. A hearing board of the Supreme Court Grievance Committee found that the allegations of the complaint had been established by clear and convincing evidence and recommended that the respondent be suspended from the practice of law for one year and one day and be assessed the costs of the proceeding. A hearing panel approved the board's findings and recommendation. The assistant disciplinary counsel has filed exceptions to the recommendation on the ground that the sanction of suspension for one year and one day is too lenient. The respondent has filed exceptions to the recommendation on the ground that the sanction is too harsh. We accept the panel's recommendation.

I

The respondent was admitted to the Bar of this court on May 25, 1983, is registered as an attorney upon this court's official records, and is subject to the jurisdiction of this court and its grievance committee in these proceedings. C.R.C.P. 241.1(b).

At the conclusion of the evidentiary hearing herein, the hearing board found that the following facts were established by clear and convincing evidence.

A

■ From 1988 to 1990, the respondent represented Space Age Federal Credit Union with respect to various collection matters. During the course of his representation, the collection coordinator for Space Age met with the respondent on several occasions to discuss the account or to accomplish the delivery of funds. On June 22, 1988, the respondent obtained a judgment on behalf of Space Age against Ann Jackson in the amount of $2,296.04, plus interest. Between July 1988 and October 3, 1988, Jackson paid the respondent a total of $325. On October 13, 1988, the respondent forwarded a check drawn on the respondent's trust account payable to Space Age. Of the total amount forwarded, $292.50 was attributable to Jackson's payments and represented the $325 collected minus the respondent's ten percent fee.

Thereafter and through June of 1990, Jackson paid the respondent a total of $1,105 in small payments by way of money orders in amounts ranging from $50 to $130. The respondent kept records of Jackson's payments by making photocopies of the money orders. The respondent did not notify the collection coordinator for Space Age of the receipt of these funds and did not segregate the funds in a trust account.

On August 7, 1990, Sandra M. Pilatowski, then recently hired as Space Age's collection coordinator, contacted the respondent concerning Space Age's accounts. The respondent told Pilatowski that the Jackson account was the only active Space Age account, that he had collected a substantial amount of funds from Jackson, and that the funds were in his trust account. Although he agreed to make the appropriate disbursement to Space Age within a week, the respondent failed to do so and failed to contact Pilatowski.

After Pilatowski had left several unanswered messages for the respondent, the respondent contacted her on August 21, 1990, and stated that he had been ill and was terminating his law practice. Just prior to this conversation the respondent experienced symptoms of a heart condition ultimately diagnosed as pericarditis, a viral inflammation of the sac surrounding the heart. The respondent was placed on medication and ordered to bed. Because the respondent's father had a heart attack at the age of thirty-five, the respondent worried excessively that he too might ultimately suffer from heart disease. Upon learning of his medical condition, the respondent abruptly closed his law practice.

Pilatowski sent a letter to the respondent requesting the return of all files and funds belonging to Space Age. The respondent failed to reply to the letter. When Pilatowski attempted to call the respondent on September 10, 1990, she discovered that his telephone had been disconnected. Pilatowski immediately contacted another attorney who sent a letter to the respondent requesting the return of all Space Age files. The respondent did not answer that letter. In a later telephone conversation with Pilatowski, the respondent stated that his wife would return all files and funds belonging to Space Age within a week. The respondent did not at that time return the files or the funds paid by Jackson. Only after Pilatowski filed a request for investigation with the Office of Disciplinary Counsel on October 9, 1990, did the respondent pay Space Age the appropriate funds collected from Jackson.

At the hearing the respondent testified that the funds he received from Jackson were initially deposited into his trust account and were then withdrawn by him and exchanged for cash and money orders of various denominations. The respondent told the board that he kept the money orders and the cash in a briefcase at his home, periodically replacing the money orders as they were about to expire. The respondent kept no documents to verify that he purchased these money orders. The hearing board determined that wherever the funds were placed, they were not preserved in an interest-bearing account as required by DR 9–102(A) (all funds of clients paid to the lawyer shall be deposited in one or more identifiable interest-bearing depository accounts maintained in the state in which the law office is located).

The board also found that the respondent's explanations of why he did not turn the funds over to Space Age or keep the funds in an identifiable interest-bearing account were not credible. The respondent first stated that he did not immediately forward the funds to Space Age's former collection coordinator because that coordinator was an alcoholic who could not be trusted with the money. The respondent could offer no reason, however, why he did not attempt to deliver the funds to Space Age by certified mail or turn them over to the coordinator's supervisor. Moreover, on October 13, 1988, the respondent did forward a trust account check to Space Age containing funds attributable to Jackson's account.

The respondent also testified that because he owed money to the Internal Revenue Service he feared that his trust account might be subject to garnishment or attachment. The respondent acknowledged, however, that the Internal Revenue Service had not threatened to seize any of his accounts and that he had not determined whether the agency had authority to seize his trust account. In addition, the respondent deposited other funds into his trust account during the same period. The board found it "illogical" for the respondent to make copies of the money orders he received from Jackson but not make copies

of the money orders the respondent testified he kept in his briefcase. The board also reasoned that if, as the respondent asserted, the funds were in a briefcase, a minimal effort would have been required to disburse them to Pilatowski immediately after her initial request.

Although the respondent denied telling Pilatowski that the funds were in a trust account, the hearing board found Pilatowski's testimony to be more credible and concluded that the respondent misrepresented to Pilatowski the location of the funds, contrary to DR 1–102(A)(4) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation). Moreover, by failing to account to Space Age over a period of almost two years, the respondent violated DR 6–101(A)(3) (a lawyer shall not neglect a legal matter entrusted to the lawyer), and DR 9–102(B)(1) (a lawyer shall promptly notify a client of the receipt of the client's funds, securities, or other properties). The respondent's failure to promptly deliver the funds to Space Age upon Pilatowski's demand violated DR 9–102(B)(4) (a lawyer shall promptly pay or deliver to the client as requested by the client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive).

■ The hearing board declined, however, to find that the respondent intentionally misappropriated the Space Age funds, as the following portion of the board's findings and recommendation indicate:

1. We have sometimes drawn a distinction, for the purpose of analyzing the appropriate level of discipline, between a "knowing" conversion of client property, in which case disbarment is almost always found appropriate, and a technical conversion of client property, in which a less severe sanction is warranted. *See, e.g., People v. Kearns*, 843 P.2d 1, 5 (Colo.1992); *People v. McGrath*, 780 P.2d 492, 493 (Colo.1989).

2. We have indicated in the context of a criminal proceeding in which the defendant was convicted of larceny as a bailee that proof of the negotiation of a check would support a charge of conversion of the money received and that the failure to pay over money collected for another constitutes conversion of that money. *McGuire v. People*, 83 Colo. 154, 155, 262 P. 1015, 1015 (1928). In the civil context, § 222A of the Restatement (Second) of Torts provides:

Complainant has presented no demonstrative evidence that respondent intentionally misappropriated the Space Age funds. At the same time, the board has concluded that respondent's explanation concerning the whereabouts of the Space Age funds was not credible. These misrepresentations, however, are not enough to lead the board to conclude that the funds were intentionally misappropriated, particularly in light of the fact that these events occurred when the respondent was physically ill as well as emotionally distraught.

The assistant disciplinary counsel suggests that this finding is erroneous, contending that the evidence presented, when combined with the respondent's failure to provide a credible explanation of the whereabouts of the funds, clearly and convincingly demonstrates that the respondent knowingly and intentionally converted the funds. Intentional and knowing conversion of client property by a lawyer usually warrants disbarment. *See People v. Kearns*, 843 P.2d 1, 5 (Colo.1992), and the cases cited therein.[1] The respondent asserts that in order to establish a knowing and intentional conversion of client property, the complainant must present evidence tracing the attorney's use of the client's property for an identifiable improper purpose.

■ We reject the respondent's argument. Knowing and intentional conversion may be established by various types of evidence.[2] However, we will not overturn

§ 222A. What Constitutes Conversion

(1) Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel.

(2) In determining the seriousness of the interference and the justice of requiring the actor to pay the full value, the following factors are important:

(a) the extent and duration of the actor's exercise of dominion or control;

(b) the actor's intent to assert a right in fact inconsistent with the other's right of control;

(c) the actor's good faith;

(d) the extent and duration of the resulting interference with the other's right of control;

(e) the harm done to the chattel;

a hearing board's conclusion that conversion was not established by clear and convincing evidence unless there is no substantial evidence in the record as a whole to support that conclusion. *People v. Dieters,* 825 P.2d 478, 481 (Colo.1992). In this case, the board's findings that portions of the respondent's testimony were incredible, coupled with the failure of the respondent to deliver the funds until a request for investigation was filed, might well support a finding of willful and knowing conversion. However, the absence of a credible explanation of his failure to pay the funds to Space Age does not establish that the respondent knowingly converted the funds. Since the record supports the board's finding that the funds were not willfully and knowingly converted, we will not disturb that finding.

### B

On or about July 17, 1990, Caroline Hardin–Arthur met with the respondent at his office regarding her desire to file for bankruptcy. She informed the respondent that a creditor was prepared to garnish her husband's wages and that her case required immediate action.

The respondent gave Hardin–Arthur appropriate forms to be completed by her and her husband for purposes of initiating bankruptcy proceedings. Hardin–Arthur met with the respondent on July 19, 1990; delivered the completed forms to him; and paid the respondent $120 in cash for the bankruptcy filing fee and $500 by check for the respondent's attorney fee. The respondent did not place any of these funds into a trust account. When she reminded the respondent that her case required urgent action, the respondent assured her that he would file the bankruptcy petition that

week. However, the respondent failed to file the petition.

Shortly after July 19 the respondent became ill and discontinued his practice. He did not, however, notify Hardin–Arthur of this fact. Hardin–Arthur later discovered that the respondent's telephone had been disconnected when she tried to call him.

On August 20, 1990, the respondent did notify Hardin–Arthur of his illness and told her that his secretarial service would inform her when her petition was typed. The respondent failed to have the petition prepared, however, and failed to inform Hardin–Arthur of the status of her case.

When her husband's wages were garnished, Hardin–Arthur retained another attorney in late September 1990 to represent her. When she informed the respondent on October 6, 1990, that she had hired another attorney, he offered to refund $200 of the fees she had paid him. Hardin–Arthur refused the offer, and the respondent eventually agreed to repay the entire $500. The sum was repaid in July of 1991, after an adversarial proceeding was commenced within the bankruptcy case.

The hearing board concluded that the respondent's conduct in representing Hardin–Arthur and her husband violated DR 9–102(A) (all funds of clients paid to the lawyer shall be deposited in one or more identifiable interest-bearing depository accounts maintained in the state in which the law office is located).

### II

The hearing panel approved the hearing board's recommendation that the respondent be suspended from the practice of law for one year and one day and be assessed the costs of the proceeding. The assistant disciplinary counsel asserts that the re-

---

(f) the inconvenience and expense caused to the other.

Restatement (Second) of Torts § 222A (1965). As § 222A(2) implies, the question of whether the actor's interference with the owner's property is serious enough to constitute a conversion of the property is usually one of degree and is a question for the finder of fact.

We also note that since attorney disciplinary proceedings are *sui generis,* and are neither civil

nor criminal, certain technical defenses to a civil action of conversion which are based on the characterization of the property as either a negotiable instrument or as money, are not relevant. *Cf. Newport Steel Corp. v. Thompson,* 757 F.Supp. 1152 (D.Colo.1990) (discussing elements of civil action of conversion involving negotiable instruments).

spondent should be disbarred because his conduct constituted a willful and knowing conversion of the Space Age funds. We have concluded, however, that the record supports the board's determination that the respondent did not willfully and knowingly convert the Jackson funds. The respondent, on the other hand, contends that the recommended discipline is too severe and that a public censure is appropriate. We disagree.

■ Under the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1986 & Supp.1992) (ABA *Standards*), in the absence of aggravating or mitigating circumstances, "[s]uspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with the client property and causes injury or potential injury to a client." ABA *Standards* 4.12. *See People v. McGrath*, 780 P.2d 492, 493 (Colo.1989) (when a lawyer knows or should know that he is dealing improperly with client property, suspension, at the least, is appropriate). The length of suspension will depend on the presence of aggravating and mitigating factors.

The hearing board found the presence of the following factors in mitigation: (1) the absence of a prior disciplinary record, ABA *Standards* 9.32(a); (2) the consequences of the respondent's misconduct were rectified, *id.* at 9.32(d); and (3) at the time of the misconduct, the respondent suffered from a physical illness which caused him to react with panic and terminate his practice, *id.* at 9.32(h). While the respondent suffered from a medical disability during the latter period of time during which his misconduct occurred, the record does not support the conclusion that the respondent's physical

disability can be deemed a mitigating factor with respect to his failure to properly safeguard and account for the funds belonging to Space Age over the entire two-year period.

In aggravation, and citing ABA *Standards* 9.22(f), the board found that "[a]ny suspension imposed should take into consideration respondent's dishonesty and his submission of false evidence to the hearing board." Standard 9.22(f) provides that the "submission of false evidence, false statements, or other deceptive practices during the disciplinary process" is an aggravating factor that may justify an increase in the degree of discipline imposed. The hearing board found that the respondent submitted false testimony to the board and that the reasons given by the respondent for his failure to forward the funds to Space Age or to keep the funds in an interest-bearing trust account were not credible. The respondent challenges the board's finding that his testimony itself constituted an aggravating factor because it was not credible.

■ At the outset, we agree with the respondent's assertion that a finding that testimony is "not credible" or is "incredible" is distinct from a finding that the witness has submitted false evidence. A witness may experience problems in recollection or genuinely believe that which is false to be true. Furthermore, the mere fact that a hearing board believes the testimony of another witness rather than that of the respondent does not require a finding that the respondent has submitted false evidence.[3]

■ The board found that in more than one instance the respondent's objective con-

---

3. In *United States v. Dunnigan*, — U.S. —, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993), the United States Supreme Court held that, upon a proper determination that the accused has committed perjury at trial, the trial court may enhance the accused's sentence, and that such an enhanced sentence does not undermine the accused's right to testify. Perjury of a witness was defined as the giving of "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake or faulty memory."

113 S.Ct. at 1116. Perjury is defined as follows in § 18–8–502(1):

> **Perjury in the first degree.** (1) A person commits perjury in the first degree if in any official proceeding he knowingly makes a materially false statement, which he does not believe to be true, under an oath required or authorized by law.

§ 18–8–502(1), 8B C.R.S. (1986). First degree perjury is a class 4 felony. § 18–8–502(3), 8B C.R.S. (1986).

duct was inconsistent with his explanations of such conduct. The board observed the testimony of the respondent and of the other witnesses. We cannot say that its conclusion that portions of the respondent's testimony were not only incredible but also constituted false evidence is not supported by the record. A determination that the respondent's testimony is not credible, or is incredible, may under some circumstances be sufficient to sustain a finding of the submission of false evidence for the purpose of ABA *Standards* 9.22(f). *See, e.g., People v. Brenner,* 852 P.2d 456, 458 (Colo. 1993) (hearing board concluded that the respondent's testimony as to what happened between him and a client was not credible and found existence of submission of false evidence as an aggravating factor); *People v. Brown,* 840 P.2d 1085, 1088–89 (Colo.1992) (finding existence of submission of false evidence under standard 9.22(f) because a portion of the respondent's testimony was not credible).

The respondent's misconduct in representing Hardin–Arthur constitutes an additional aggravating factor. ABA *Standards* 9.22(d). Given the seriousness of the respondent's conduct, and balancing the aggravating factors against the factors in mitigation, we conclude that suspension for one year and one day is appropriate. *See People v. Kearns,* 843 P.2d 1, 5 (Colo.1992) (misrepresentations to client and dishonest assignment of promissory note warrant suspension for one year and one day where attorney had no previous disciplinary record). Any shorter period of suspension would denigrate the seriousness of the misconduct and would afford insufficient assurance that the respondent had been rehabilitated. Accordingly, we accept the hearing panel's recommendation.

### III

It is hereby ordered that Bruce Jeffrey Wechsler pay the costs of this proceeding in the amount of $1,282.54 within ninety days after the announcement of this opinion to the Supreme Court Grievance Committee, 500–S Dominion Plaza, 600—17th Street, Denver, Colorado 80202–5435.

Wechsler shall not be reinstated until he has complied with the provisions of C.R.C.P. 241.22(b) through (d) regarding reinstatement proceedings.