The PEOPLE of the State of
Colorado, Complainant,

v.

Don Kenneth HANKS, Jr.,
Attorney–Respondent.

No. 97SA215.

Supreme Court of Colorado,
En Banc.

Jan. 20, 1998.

Linda Donnelly, Disciplinary Counsel, John S. Gleason, Deputy Disciplinary Counsel, Denver, for Complainant.

Don Kenneth Hanks, Jr., Farmer Branch, TX, Pro Se.

PER CURIAM.

The deputy disciplinary counsel and the respondent in this lawyer discipline case executed a stipulation, agreement, and conditional admission of misconduct. *See* C.R.C.P. 241.18. The conditional admission recommended that the respondent be suspended from the practice of law in a range from one year and one day to three years. An inquiry panel of the supreme court grievance committee approved the conditional admission and recommended that the respondent be suspended for two years. We accept the conditional admission and the inquiry panel's recommendation.

I.

The respondent was admitted to practice law in Colorado in 1981. According to the conditional admission, the respondent incorporated KL Capital Management Corporation in June 1989. The same year, the respondent began soliciting investors for investments, stock options, and stock index options. The respondent was not registered or licensed to sell securities, commodities, or other investments, or to make trades on behalf of others as required under federal law. He was, however, a registered investment adviser and he had applied to take a brokerage licensing test and a commodity training adviser exam.

In the spring of 1990, the respondent entered into a joint venture with two persons in Fort Collins. Their agreement provided that the other persons would refer their business clients and others to the respondent's investment company in return for the respondent's paying them a "commission," which was at first a percentage of the profits, but later became a percentage of the commissions the respondent charged investors for the trades.

Potential investors were given an information packet, including an application form, various risk disclosure items, information on the respondent's commission, and a letter introducing the respondent and his investment strategy. The letter stated that "KL

Capital Management Corporation has developed a sophisticated and reliable stock market strategy over the last year that can be used in any type of market environment. The strategy involves the buying and selling of stock options and stock index options in a very conservative and prudent fashion." The information advised investors that the respondent would be keeping 40% of the funds in a money market account earning 8% annually; 40% in option spreads; and 20% in puts or calls, options to sell or buy stock.

The respondent attracted about 113 investors who invested more than $2 million with him in accounts ranging from $2,000 to over $500,000. The respondent told investors in his information packet and in seminars that he would make a commission only if they profited from the trades, and that the commission would be 25% of the profits. He also indicated that they would be charged for the commissions that the respondent paid to the brokerages to make the trades. The brokerages he used at first charged varying commissions, but when he began to use discounted brokerages he did not reduce the amounts he charged investors for the trades. He paid part of the difference between what he actually paid the brokerages and what he collected from the investors to the other members of the joint venture for their referrals. Between September 1989 and September 1991, the respondent acquired approximately $250,000 in this manner, and paid his two joint venturers between $114,000 and $125,000. The respondent had no precise system of accounting and he used the KL bank account and his personal bank account to pay family expenses.

The respondent started to incur large losses in his options investments during 1990, and he stopped soliciting investors. At the suggestion of one of the brokers he used, the respondent began investing in the commodity options market in early 1991. The respondent's losses in commodity options ran into the hundreds of thousands of dollars in early 1991. The respondent did not at that time disclose to his investors the change in his investment strategy from stock options to commodity options. In late spring of that year he did tell the investors of the change in

plan, but did not inform them that the large losses had prompted the switch. Nor did his monthly statements to investors accurately reflect the substantial losses that he had incurred with their money.

The respondent's investment accounts were down to $300,000 in August 1991, and the funds were entirely in currency futures. The respondent lost the rest of the money during a two-week period in August. On September 6, 1991, he advised his investors that he had lost all of their money and had made "many mistakes" in trading the past year.

The respondent met with a large number of his investors one week later. He admitted that he had not made full disclosure to the investors and that he lost about $1.6 million. He told the investors that the brokerages he had used should not have allowed this to occur and that there might be recourse against these brokerages. He told them he would "plan an attack."

The respondent was sued in state court by four of the large investors and the case was removed to the United States District Court. With court approval, a certified public accountant and specialist in reconstructing corporate finances and uncovering fraud undertook an investigation of the respondent's actions. The respondent cooperated in this investigation. The federal district court subsequently dismissed the case for reasons not disclosed in the conditional admission.

On October 22, 1993, the respondent consented to an order enjoining him from violations of various securities laws. Following an investigation, the Securities and Exchange Commission reached a consent settlement with the respondent in February 1994. As part of this settlement, the respondent admitted that he had

(a) employed devices, schemes, or artifices to defraud, or (b) make [sic] untrue statements of material facts or omitted to state material facts necessary to make the statements made, in light of the circumstances in which they were made, not misleading, or (c) engaged in acts, practices, or courses of business which operated as a fraud or deceit upon persons in willful violation of

Section 10(b) of the Exchange Act and Rule 10b–5 thereunder.

The material facts which were either untrue or which the respondent omitted to state concerned his past performance in options trading, his compensation, the value of the investors' interests, and the earnings made from the investments. The respondent has admitted to serving as an investment advisor prior to May 8, 1991, without being registered as required under section 203(a) of the Investment Advisers Act of 1940, 15 U.S.C. § 80b–3(a) (1994). He also served as a broker from April 1990 to September 1991 without proper registration, in willful violation of section 15(a)(1) of the Securities Exchange Act of 1934, 15 U.S.C. § 78o(a)(1) (1994). In addition, his company sold securities from April 1990 to September 1991 without being properly registered as an investment company, in willful violation of section 7(a) of the Investment Company Act of 1940, 15 U.S.C. § 80a–7(a) (1994).

The respondent has stipulated that the foregoing conduct violated DR 1–102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation); DR 1–102(A)(6) (engaging in conduct that adversely reflects on the lawyer's fitness to practice law); and C.R.C.P. 241.6(5) (violating the criminal laws of a state or of the United States).

## II.

The conditional admission authorizes a suspension in the range of a year and a day to three years. The inquiry panel approved the conditional admission and recommended a suspension for two years, as did the complainant. Under the ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) (ABA *Standards*), in the absence of mitigating factors, disbarment is generally appropriate when "a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that adversely reflects on the lawyer's fitness to practice." ABA *Standards* 5.11(b).

The complainant represents that a lengthy suspension rather than disbarment is appropriate in this case because of certain mitigating factors. Most important, the respondent has not been previously disciplined in the sixteen years he has been licensed to practice law. *See id.* at 9.32(a). He has cooperated in these disciplinary proceedings, *see id.* at 9.32(e); his participation in lengthy civil and Securities and Exchange Commission proceedings constitutes the imposition of other penalties or sanctions, *see id.* at 9.32(k); and the respondent is remorseful for his misconduct, *see id.* at 9.32(*l* ). In aggravation, the respondent had a dishonest or selfish motive, *see id.* at 9.22(b); and he has substantial experience in the practice of law, *see id.* at 9.22(i).

In *People v. Rudman,* 948 P.2d 1022, 1028 (Colo.1997), we suspended the attorney-respondent for three years. While acting as the personal representative of an estate, Rudman actively misrepresented to the sole beneficiary of the estate the disposition of certain of the decedent's assets, and the respondent's own and his wife's interests in a corporation of which the decedent was a shareholder before his death. *Id.* at 1022. We found ABA *Standards* 5.11(b) applicable to Rudman's misconduct, and indicated that, but for the presence of mitigating circumstances (including the absence of a prior disciplinary record), disbarment would be appropriate. *Id.* at 1026.

We disbarred the lawyer in *People v. Sichta,* 948 P.2d 1018, 1020 (Colo.1997), following his convictions for wire fraud and securities fraud. *Id.* at 1018. We concluded that ABA *Standards* 5.11(a) applied, which recommends disbarment when "a lawyer engages in serious criminal conduct a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; . . . or an attempt or conspiracy or solicitation of another to commit any of these offenses." *Id.* at 5.11(a); *see also People v. Jackson,* 943 P.2d 450, 455–57 (Colo.1997) (disbarment rather than suspension appropriate for fraudulent conduct in connection with the sale of the lawyer's own house and his brother's house).

We suspended the lawyer in *People v. Preblud,* 764 P.2d 822, 826–27 (Colo.1988), for three years rather than disbarring him even

though he was convicted of securities fraud because of the presence of significant mitigating factors. "We are impressed with the respondent's long record of integrity that preceded [the fraudulent conduct] and with his remorse and determination not to repeat such conduct in the future. Of great importance as well is the fact that the respondent served a year in prison for his criminal behavior." *Id.* at 827; *see also People v. Kearns*, 843 P.2d 1, 4–5 (Colo.1992) (suspending lawyer for one year and one day for inducing a loan through misrepresentations and assigning loan proceeds without lender's consent or knowledge); *People v. Phelps*, 837 P.2d 755, 759 (Colo.1992) (suspending lawyer for one year and one day for violations of equity skimming statute).

We have determined that a long period of suspension is sufficient in this case because of the presence of mitigating factors similar to those in *Preblud*. Under these circumstances, we therefore elect to accept the conditional admission and the recommendations of the complainant and inquiry panel.

### III.

Accordingly, it is hereby ordered that Don Kenneth Hanks, Jr. be suspended from the practice of law for two years, effective thirty days after the issuance of this opinion. It is further ordered that the respondent pay the costs of this proceeding in the amount of $142.23 within thirty days after the announcement of this opinion to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 920–S, Denver, Colorado 80202.