**The PEOPLE of the State of Colorado, Complainant,**

v.

**Marci S. GRAY, Respondent.**

**No. 00PDJ040.**

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

June 6, 2001.

Opinion issued by Presiding Disciplinary Judge ROGER L. KEITHLEY and Hearing Board members MARY WEISS and MARK D. SULLIVAN, both members of the bar.

## OPINION AND ORDER IMPOSING SANCTIONS

*SANCTION IMPOSED:* **PUBLIC CEN-SURE**

This consolidated matter was heard on September 27, 2000, before the Presiding Disciplinary Judge ("PDJ") and two hearing board members, Mary Weiss and Mark D. Sullivan, both members of the Bar. James E. Coyle, Assistant Regulation Counsel, represented the People of the State of Colorado (the "People"). Carl F. Manthei represented the respondent, Marci S. Gray("Gray"), who was also present. The People's exhibits 1 through 28 and 30 were admitted into evidence, and Gray's exhibits 1 through 4 were also admitted into evidence. The PDJ and Hearing Board heard testimony from the People's witness Judith LaSpada, Mark Field and Marci S. Gray, and from Gray's witness Mark Field. The PDJ and Hearing Board considered argument of counsel, the exhibits admitted, assessed the credibility of the witnesses, and made the following findings of fact which were established by clear and convincing evidence.

### I. FINDINGS OF FACT

Marci S. Gray has taken and subscribed the oath of admission, was admitted to the bar of this court on October 21, 1996 and is registered upon the official records of the Supreme Court, registration number 27307. Gray is subject to the jurisdiction of this court in these disciplinary proceedings.

Gray was employed by Mark Field ("Field") prior to September 15, 1997. On that date the Colorado Supreme Court issued an opinion suspending Field from the practice of law for six months effective October 15, 1997. *See People v. Field,* 944 P.2d 1252 (Colo.1997). During the one month period before the effective date of his suspension, Field and Gray discussed the ramifications of his suspension on their law practice. Prior to the issuance of the opinion, although Gray

was licensed to practice law, she was employed and worked as a secretary for Field. Field obtained a written legal opinion from another Colorado attorney setting forth the limitations imposed upon him as a result of the suspension order. Field was informed that he could not appear in court, meet with clients, counsel clients, advise other attorneys, or sign legal documents. He was informed that he could remain with the law office, however, so long as his duties were limited to acting as a secretary, bookkeeping or acting as a paralegal.

Field asked Gray and Gray agreed to take over the practice of law aspects of the law practice during the period of Field's suspension in order to continue to serve his three clients. It was intended by Field and Gray that Field would continue to work on cases as a paralegal under Gray's supervision and that his paralegal time would be billed at $100 per hour. The clients were duly notified of the change in responsibility and agreed to continue with Gray as their attorney. Gray realized that under this reorganization that she was the attorney responsible for handling client matters and for supervising Field. Gray reviewed the opinion suspending Field, the Colorado Rules of Professional Conduct ("Colo.RPC") and the opinion of a Colorado attorney regarding the limitations on Field's activities. Gray understood the new arrangement between herself and Field placed full responsibility for all legal issues upon her but that she would defer to Field on business related matters. As part of the change in responsibility arising out of the suspension order, Gray and Field began using letterhead identifying themselves as "Field & Associates, Attorneys at Law."[1]

Prior to his suspension, Field engaged primarily in a collection practice doing a substantial amount of work for American Banco, a debt collection agency. On September 30, 1997, after the Field disciplinary opinion was issued but before the suspension became effective, the assets and good will of American Banco were sold to Judy LaSpada ("LaSpada") and continued to operate under the name First Revenue Assurance, LLC d/b/a American Banco. LaSpada was aware of Field's suspension and Gray's intention to begin handling all legal aspects of the collection files and agreed to continue as a client under that arrangement. However, LaSpada immediately informed Field that she wanted to renegotiate the legal fees charged on the collection cases. Both before and after his suspension became effective, Field negotiated with LaSpada in an attempt to retain the client. LaSpada sought a substantial reduction in the per case fees charged on each matter and Field was resistant. The negotiations included the transmittal of several letters by Field on "Field & Associates" letterhead signed by Field.

On October 6, 1997, Field sent a legal fee statement to LaSpada detailing services performed before the effective date of Field's suspension. Field's time was billed at $200 per hour. On November 18, 1997, Field met with LaSpada in her office to discuss certain entries contained upon the legal fee statement she had received during the month of October. LaSpada objected to the $200 per hour rate for Field, paralegal time billed to train one of her employees and lack of documentation for other entries. LaSpada refused to pay the statement until certain modifications were made. By letter dated January 13, 1998, LaSpada memorialized her recollection of the conversation between herself and Field at the November 18 meeting, specifically mentioning that Field had agreed to reduce his $200 per hour rate and eliminate the fees for training. The letter referenced LaSpada's earlier request, "I also requested a detailed account of the hourly charges for validation and account documentation." The letter demanded, in specific detail, information regarding billed telephone calls. By the time LaSpada sent the January 13 letter, negotiations were at an impasse, LaSpada had received both the October and November statements from Field and she was generally disputing numerous entries on those statements. LaSpada closed her letter to Field "I am enclosing a check in the amount of $1,000.00 dollars to

---

1. Neither the letterhead nor billing statements of Field & Associates disclosed that Field was suspended from the practice of law.

demonstrate good faith and our intention to pay you for valid services rendered. Any services that can not be supported with the proper documentation will not be paid. Please provide the revised invoice as quickly as possible."

Field responded on January 26, 1998, using "Field & Associates" letterhead, attempted to explain the entries in a general fashion, made some modifications to the amount outstanding, requested full payment and informed LaSpada that the December statement added $2,338.50 to the amount owed.[2] On February 9, 1998, LaSpada sent a letter to Field and Gray terminating their relationship and demanding that any garnishment checks be promptly forwarded to her office. LaSpada premised the termination upon her repeated unsuccessful efforts to substantiate the billing. On February 11, 1998, in a letter on "Field & Associates" letterhead, signed by both Field and Gray, LaSpada was informed that "I cannot continue to represent your company." The letter advised LaSpada that motions to withdraw were being prepared and filed, demanded payment of outstanding statements and threatened action to collect. LaSpada responded the following day, confirmed the termination of the attorney/client relationship and stated "I am willing to pay for services performed provided that you can provide documentation supporting your charges. I have asked for this twice verbally and now three times in writing. Once the documentation is provided and validated, you will be paid for services actually performed."

Historically, the collection cases handled by Field and Gray resulted in payments from debtors of American Banco pursuant to garnishments. Either the garnished funds or garnishment checks were promptly tendered to American Banco after receipt. Recognizing that the billing dispute with American Banco would not be timely resolved, Gray instructed Field to open a bank account and escrow all funds received under American Banco garnishments. On February 5, 1998, Field opened a bank account entitled "Field & Associates Escrow for American Banco." The account was not interest bearing. More-

over, Field designated only himself and his wife as authorized signatories on the account. Gray did not become a signatory on the account until March 1998, a month after the account was opened and after several transactions occurred in the account.

Between February 5, 1998 and February 25, 1998, $9,987.19 was deposited into the escrow account. All of the funds deposited were American Banco funds arising from garnishments on cases handled by Field or Gray. On February 9 and again on February 17, 1998, with Gray's knowledge, Field withdrew a total of $5,807 from the escrow account for law office expenses. LaSpada neither authorized nor was aware of these withdrawals at the time they occurred. On February 20, 1998, Gray sent a letter to LaSpada which stated, "This letter is your notification that due to unpaid fees owed me by your company, I have asserted an attorney's lien pursuant to C.R.S. § 12–9–119 on property of First Revenue Assurance, LLC in my possession." The same day, Field, with Gray's knowledge, wrote another check on the escrow account for an additional $2,000.00 payable to Field & Associates. Prior to providing any notice to LaSpada of the $9,612.05 in disputed funds placed in the escrow account between February 5 and February 20, 1998, Gray had authorized the withdrawal of $7,807.00 of those funds for law office related expenses. On February 25, 1998, Field, again with Gray's knowledge, wrote a fourth check on the escrow account for $1,700.00. The proceeds of that check, as with the earlier withdrawals, were deposited into the business account of Field & Associates.

On February 27, 1998, another statement was forwarded to LaSpada reflecting an overdue balance of $10,026.50, additional fees of $4,068.14 and a credit as of February 20, 1998 of $7,409.57 for "payment through attorney's lien on garnishments." In March 1998, Gray became the sole signatory on the escrow account and on March 20 issued a check to Field & Associates for $1,500.00, which was deposited into the Field & Associates business account. Two additional statements

---

**2.** None of the letters sent by Field or Field and Gray on "Field & Associates" letterhead made any reference to the fact that Field was suspended from the practice of law.

were sent to LaSpada by Field & Associates in the following months. They reflected additional fees of $1,473.15 and payments by way of attorney's lien on garnishments of an additional $3,712.54.

Between February 5, 1998 and the end of May 1998, Gray and Field claimed to be owed $11,499.65 by American Banco, deposited $12,530.72 of American Banco funds into the escrow account and withdrew $9,507.00 of those funds for payment of outstanding statements. During that entire period of time, LaSpada disputed the amount owed to Field and Gray for legal services on behalf of American Banco.[3] Prior to proceeding on their course of action to expend portions of American Banco garnishment funds, both Field and Gray researched the Colorado attorney's lien statute, § 12–5–119, 4 C.R.S. (2000), and became convinced they could take possession of funds generated from judgments they obtained on behalf of American Banco *and* use those funds to pay their outstanding legal fee statements.

First Revenue Assurance, LLC d/b/a American Banco eventually brought suit against Field and Gray in Denver County Court seeking to recover the garnished funds used by Field and Gray to pay the outstanding fee statements and to determine the amount of money, if any, American Banco owed Field and Gray. On January 6, 1999, a county court judge ruled that although Field and Gray had not strictly complied with the requirements of the attorney's charging lien statute, they were entitled to a sum of money exceeding the amount they withdrew from the escrow account. In reaching his decision,

the county court judge concluded that the time billed by Field as paralegal time at $100.00 per hour was against public policy and deducted that amount from the amount claimed by Field against American Banco.[4]

## II. CONCLUSIONS OF LAW

The Complaint in this disciplinary case consists of four separate claims charging Gray with several violations of The Colorado Rules of Professional Conduct ("Colo.RPC") for which discipline may be imposed under C.R.C.P. 251.5. Claim 1 alleges that Gray violated Colo. RPC 7.5(a)(a lawyer shall not use or participate in the use of a firm name, letterhead, professional card, office sign, telephone directory listing, law list, legal directory listing, or other professional designation that violates Rule 7.1)(making a false or misleading communication about the lawyer or the lawyer services). This claim is based upon the use of "Field & Associates, Attorneys at Law" letterhead transmitted to American Banco and the practice of law under the firm name of "Field & Associates" following Field's suspension from the practice of law.

The letters forwarded to American Banco on the "Field & Associates" letterhead, with the exception of one, were signed by Field. There is no indication in the letters that Field was suspended from the practice of law. The final letter was signed both by Field and Gray and, as with the earlier letters, makes no mention of the status of Field's license to practice law. Utilization of the letterhead of an attorney or association of attorneys, when signed, absent appropri-

---

**3.** Gray contended and Field testified that it was their understanding that only those portions of the fee statements relating to telephone conversations were in dispute and they kept approximately $2,000 in reserve in the escrow account to cover the amount attributable to telephone call charges. Both LaSpada's testimony and the surviving documentation strongly indicate that LaSpada disputed all portions of the fee statements. The PDJ and Hearing Board found LaSpada's testimony to be more credible than Field's and find that all portions of the fee statements were in dispute.

**4.** Prior Colorado disciplinary opinions have recognized that a lawyer who has been suspended

or disbarred may perform services as a paralegal. *See Goff v. State of Colorado,* 35 P.3d 487, 492 (Colo. PDJ 2000) 29 Colo. Law 126, 128 (October 2000)(2000 Colo. Discipl. LEXIS 7); *McCaffrey v. State of Colorado,* 35 P.3d 481, 483 (Colo. PDJ 2000) 29 Colo. Law 109, 110 (May 2000) (2000 Colo. Discipl. LEXIS 4); *Varallo v. State of Colorado,* 35 P.3d 177, 179 (Colo. PDJ 1999) Colo. Law 136 (November, 1999) (1999 Colo. Discipl. LEXIS 11); *but see Denver Bar Ass'n v. Public Utilities Commission,* 154 Colo. 273, 391 P.2d 467 (1964)(defining what constitutes the unauthorized practice of law).

ate qualification, conveys the message that the person signing the letterhead is an attorney duly licensed and authorized to practice law. Whether the person signing the letterhead is, in fact, an attorney authorized to practice law is a material fact. Colo. RPC 7.5(a) does not require proof of an intent to mislead or reliance as an element of its violation. The rule is designed to place the burden upon the attorney to insure that the representation of authority to practice law is truthful and complete. Whether the recipient or another is actually misled by the use of the letterhead is not relevant to determining a violation of the rule. *See* Colo. RPC 7.1,[5] which, on its face, does not require reliance;[6] *People v. Smith*, 830 P.2d 1003, 1006 (Colo.1992) (prohibiting use or participation in the use of a letterhead if it includes a statement or claim that is false, fraudulent, misleading or deceptive).

■ Gray's participation in the practice of law under the name "Field & Associates," knowing that Field was suspended, utilizing letterhead under that name and allowing Field to sign correspondence on that letterhead without an appropriate designation of Field's suspension from the practice of law constitutes a violation of Colo. RPC 7.5(a).

■ Claim 2 of the Complaint charges Gray with a violation of Colo. RPC 1.5(a)(charging an unreasonable fee) as a result of the $100 per hour charge for Field's services as a paralegal. Colo. RPC 1.5(a) states:

(a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

■ Gray argues that Colo. RPC 1.5(a) is strictly limited to the fee charged for the lawyer and does not encompass legal fees arising from other legal services provided by the lawyer's staff. Colo. RPC 1.5(a) is not so limited. Individually or in an association with other lawyers, it is the lawyer who is responsible for the creation of the lawyer/client relationship and the explanation of fees and charges that relationship may generate. *See* Colo. RPC 1.2, Colo. RPC 1.5 and Colo. RPC 5.3. That responsibility is placed upon the lawyer to minimize potential misunderstandings between lawyer and client over the relationship and its prospective cost to the client. Of necessity, the required explanation of services and costs must include charges related to the tasks to be performed which are not directly related to the lawyer's personal devotion of time to the client's needs. The requirement that a "lawyer's fee" be reasonable as set forth in Colo. RPC 1.5(a) includes all charges included within the lawyer's statement to the client for services rendered to the client by the lawyer or members of his/her support staff. *See* Geoffrey C. Hazard, Jr., *The Law of Lawyering*, § 8.8

---

5. Colo. RPC 7.1 provides in relevant part that a "communication is false or misleading if it: (a) contains a material misrepresentation of fact or law, or omits a fact necessary to make the statement considered as a whole not materially misleading; (b) is likely to create an unjustified expectation about results the lawyer can achieve, or states or implies that the lawyer can achieve results by means that violate the rules of professional conduct or other law; or (c) compares the

lawyer's services with other lawyers' services, unless the comparison can be factually substantiated."

6. Reliance and the consequential injury arising from that reliance, if any, may be considered in determining the appropriate sanction once a violation has been found.

n. 1 (Aspen Law & Business 2001) (stating that Rule 1.4 requires a lawyer to explain a matter in sufficient detail to enable the client "to make informed decisions regarding the representation." The *total* amount that the representation will cost the client is obviously a salient fact "regarding the representation" (emphasis in original)); *ABA Comm. on Professional Ethics and Grievances,* Formal Op. 93–379 (1993)(discussing billing for professional fees, disbursements and other expenses and providing that a lawyer must disclose to a client the basis on which the client is to be billed for both professional time and any other charges).

To determine whether the charges set forth on a lawyer's statement to the client is reasonable or unreasonable, Colo. RPC 1.5 sets forth eight separate factors which may be considered. Analysis of seven of the factors depends upon the unique facts of the particular situation. The remaining factor is based upon the fee customarily charged for similar legal services in the locality. Each factor, however, may only be determined from evidence presented in any given case. In this disciplinary case, the only evidence bearing upon any of the eight factors was the admission into evidence of the statements submitted to American Banco for the services provided, the fact that Gray and Field performed legal services primarily for three clients and that Field was a suspended lawyer. No evidence was offered relating to the novelty and difficulty of the task presented, the relative skill necessary for the legal services, the fee customarily charged for paralegal services, the results obtained, or the time constraints, if any, imposed by the client. The statements submitted to American Banco do not correlate to the services provided to a particular case, disclose the relative complexity of issues presented nor, on their face, identify paralegal time versus lawyer time. Absent additional evidence, in particular evidence bearing upon the customary fee for similar paralegal services, the PDJ and Hearing Board cannot conclude by clear and convincing evidence that charging paralegal time at the rate of $100.00 per hour in collection cases would constitute an unreasonable fee. Consequently, the charge in claim 2 of Colo. RPC 1.5(a) is dismissed.

■ Claim 3 of the Complaint charged Gray with a violation of Colo. RPC 1.15(d)(failing to deposit client funds in an interest bearing account), Colo. RPC 5.3(b)(failing to supervise a non-lawyer) and, alternatively, Colo. RPC 8.4(h)(other conduct adversely reflecting on a lawyer's fitness to practice law). The evidence was undisputed that Gray, as the responsible attorney, was involved in the decision to deposit the garnishment checks into a non-interest bearing escrow account.

The garnishment checks were generated from judgments secured by Field and Gray on behalf of American Banco from debtors of American Banco. The funds underlying the checks represented amounts owed to American Banco. Once the checks were presented for collection, in due course, the funds were deposited into the escrow account. When so deposited, those funds belonged to American Banco, the client. Although Field and/or Gray may have claimed a lien against the funds, the funds remained the property of American Banco.

■ In Colorado, there is no common law right to an attorney's lien. *People v. Brown,* 840 P.2d 1085, 1087 (Colo.1992). The right to a retaining or charging lien arises by statute. *See* § 12–5–119, 4 C.R.S. (2000) and § 12–5–120, 4 C.R.S. (2000) respectively. Therefore, strict compliance with the statute is required. *Telluride Real Estate Co. v. Penthouse Affiliates, LLC,* 996 P.2d 151, 154 (Colo.App.1999)(stating that statutes in derogation of the common law must be strictly construed). The burden of proof is upon the attorney who claims a lien for services to show that he comes within the statute. *See Gooding v. Lyon,* 63 Colo. 328, 166 P. 564, 565 (1917). The language of § 12–5–119 implies that there is an agreement of compensation between the attorney and client. *See* § 12–5–119, (providing that in the case of demands in suit and in the case of judgments obtained in whole or in part by any attorney, such attorney may file, with the clerk of the court wherein such cause is pending, notice of his claim as lienor, setting forth specifically the *agreement of compensation* between such attorney and his client)(emphasis add-

ed). In the present case, the amount of attorneys' fees due from the client was disputed. *See Florida Bar v. Bratton,* 413 So.2d 754 (Fla.1982)(holding that an attorney cannot impose a valid lien on client's funds entrusted to the attorney for a specific purpose where the parties have not agreed that fees should be paid out of the entrusted funds). If the attorney retains funds in excess of what he is subsequently determined to be entitled to, he may be liable for a wrongful conversion. *See Adams, George, Lee, Schulte & Ward, P.A. v. Westinghouse Electric Corp.,* 597 F.2d 570 (5th Cir. 1979). "A lawyer having control over a trust account has no more right to make a unilateral disbursal of it to himself than he would to a stranger." *In the Matter of Kunin,* 252 Ga. 310, 313 S.E.2d 697, 699 (1984). "[The statute authorizing attorneys' liens] must be understood to authorize the application of client funds held by an attorney to the satisfaction of liquidated sums owing to the attorney." *Id.* The disciplinary rules do not permit an attorney to enforce an attorney's lien by helping himself to the client's funds. *State Bar Grievance Administrator v. Geralds,* 402 Mich. 387, 263 N.W.2d 241, 243 (1978). The "right to retain" funds in escrow until the dispute is resolved under a retaining lien in no way translates into a right unilaterally to remove the funds for professional or personal use without independent or stipulated resolution to the conflict over fees. *Attorney Grievance Commission of Maryland v. Sheridan,* 357 Md. 1, 741 A.2d 1143, 1161 (1999). To do so would directly conflict with the requirements of Colo. RPC 1.15. "[Rule 1.15 requires] that the funds in dispute be deposited in a proper escrow account, and not, as here, appropriated to the lawyer's own use without independent resolution of the underlying fee controversy." *Attorney Griev. Comm'n v. McIntire,* 286 Md. 87, 405 A.2d 273, 278 (Md.1979); *accord McGrath v. State Bar of California,* 21 Cal.2d 737, 135 P.2d 1, 3 (Cal.1943)(attorney found to have engaged in unethical conduct where he asserted a retaining lien in the proceeds of a judgment which he had collected for his client where the attorney had no agreement with his client for compensation for his services); *See In Re Hays,* 189 Okla. 386, 118 P.2d 265 (Okla.1941)(holding that in the absence of an agreement for an additional fee, an attorney has no legal right to withhold any of the funds of the client even though such attorney might be entitled to an additional fee for the services rendered; an attorney has a general possessory interest or retaining lien on the client's money for services or for a general balance due from his client but may not withhold it absent an agreement).

Colo. RPC 1.15 provides, in part:

(a) In connection with a representation, an attorney shall hold property of clients or third persons that is in an attorney's possession separate from the attorney's own property. Funds shall be kept in a separate account maintained in the state where the attorney's office is situated, or elsewhere with the consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the attorney and shall be preserved for a period of seven years after termination of the representation.

(c) When in the course of representation a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved.

(d) "Accounts" as used in paragraph (a) above shall mean one or more identifiable interest-bearing, insured depository accounts; provided, that with the consent of the client or third person whose funds are in the account, an account maintained under subparagraph (e)(1) below (interest is paid to the client or third person) need not be an insured depository account, but all accounts maintained under subparagraph (e)(2) below (interest is paid to the Colorado Lawyer Trust Account Foundation) shall be insured depository accounts. For the purpose of this rule, "insured depository accounts" shall mean government in-

sured accounts at a regulated financial institution, on which withdrawals or transfers can be made on demand, subject only to any notice period which the institution is required to reserve by law or regulation.

Colo. RPC 1.15(c) must be considered in conjunction with Colo. RPC 1.15(a) and (d). Colo. RPC 1.15(a) in combination with Colo. RPC 1.15(d) require an attorney who holds funds of a client to place those funds in a separate interest bearing account. Colo. RPC 1.15(c) requires an attorney who holds possession of property, including funds, which is claimed by the client and a third person, to be kept separate until there has been an accounting and severance of interests. There is nothing within the language of Colo. RPC 1.15(c) or its commentary which suggests that Colo. RPC 1.15(c) displaces the mandate of Colo. 1.15(a) and (d):

> The proper procedure for asserting and resolving a charging lien is spelled out in Model Rule 1.15(c). When a lawyer comes into possession of funds to which both she and a client assert an interest, she must promptly disburse any undisputed portion, and then move expeditiously to resolve the dispute over the remaining funds.

Hazard, *The Law of Lawyering*, § 8.23.

> Model Rule 1.15(c) is a companion to Rule 1.15(b) ... [w]hen there is a dispute as to what share a lawyer is to receive from trust funds being held by the lawyer, whether the dispute is with a client or a third party, the lawyer must not take advantage of his physical control of the funds. Instead, he must disburse the undisputed share, as required by Rule 1.15(b), and keep safely segregated the remainder under Rule 1.15(c), until the dispute is resolved. *Id.* at § 19.7.

Gray, however, argues that once a dispute arises between an attorney and the client over funds held by the attorney, those funds need no longer be maintained in a separate interest bearing account because Colo. RPC 1.15(c) does not specifically refer to an interest bearing account. Colo. RPC 1.15(c) is broader in coverage than Colo. RPC 1.15(a) and (d). It applies to property of any kind in the possession of the attorney over which two

or more entities claim an interest, regardless of whether the client is one of the claimants or is not. If the client is one of the claimants, the more specific provisions of Colo. RPC 1.15(a) and (d) apply as well. Colo. RPC 1.15(a) and (d) unequivocally require funds to which the client asserts a claim to be placed in an interest bearing account so long as they remain under the control of the attorney.

■ Gray also argues, however, that the assertion of the attorney's charging lien under § 12–5–119 C.R.S., 4 C.R.S. (2000) altered her duties and responsibilities under Colo. RPC 1.15. She contends that once she "asserted" the charging lien, she was free to expend the funds subject to the lien as her own funds. Gray and Field both testified that they had researched the attorney's charging lien statute, had reviewed an article, Cowden, T., *Perfection and Enforcement of Attorney's Liens in Colorado*, 26 Colo. Law. 57 (March 1997) and one Colorado case, *In re Marriage of Berkland*, 762 P.2d 779 (Colo.App.1988) and had come to the conclusion that they were entitled to use the garnished funds as their own up to the amount of their claimed legal fee statements. Although the operation of the attorney's lien statute is less than clear, the authorities relied upon by Gray do not authorize an attorney to simply *assert* an attorney's lien and commence spending the funds upon which the lien is asserted. An attorney's lien, like other liens, merely places others on notice that someone claims an interest in the funds subject to the lien and must be reduced to judgment before title to the liened property is transferred. Even if Gray and/or Field had fully complied with the provisions of the attorney's charging lien statute, the garnished funds at issue remained the property of American Banco until the lien was reduced to judgment. Field, with Gray's knowledge and approval, however, began spending the garnished funds long before any court had reduced the lien to judgment.

Although Field and Gray's attempt to assert an attorney's charging lien against the garnished funds may have had the effect of placing the funds into the category of disputed funds, it did not relieve Gray from the

requirements of Colo. RPC 1.15(a) and (d). Until the lien was reduced to judgment, the funds remained the property of the client, American Banco, subject to a lien, and had to be maintained in an interest bearing account. Because Gray did not do so, her conduct violated Colo. RPC 1.15(d).

■ Once Field was suspended, Gray assumed the responsibility of supervising his activities in conjunction with her practice of law and was required to make reasonable efforts to ensure that Field's conduct was compatible with her professional obligations. It was Gray's responsibility to hold the property of American Banco, not Field's. *See* Colo. RPC 1.15(a). Notwithstanding her obligation, Gray delegated that responsibility to Field and allowed Field to open an account intended to hold the disputed funds upon which she was not a signatory and to deposit client funds into that non-interest bearing account in contravention of the requirements of Colo. RPC 1.15(d). Allowing Field to open such an account in violation of Colo. RPC 1.15(d) was not reasonable in light of Gray's duties and responsibilities as the supervising attorney. For a period of nearly a month, Gray was aware that disputed client funds were on deposit in a non-interest bearing account over which she had no control. Consequently, Gray also violated Colo. RPC 5.3(b).[7]

■ Claim 4 of the Complaint alleges that Gray violated Colo. RPC 1.15(c) by failing to keep the disputed funds separate until the dispute was resolved and Colo. RPC 8.4(c)(engaging in conduct involving dishonesty, fraud, deceit or misrepresentation) by utilizing a portion of the garnished funds while they remained in dispute. Colo. RPC 1.15(c) requires that disputed funds be held separately until the dispute is resolved. Gray did not do so. She allowed Field to withdraw and expend approximately $9,507.00 of the disputed funds. By so doing, she violated Colo. RPC 1.15(c).

The charge under Colo. RPC 8.4(c) is based upon the People's theory that Gray allowed the conversion of a portion of the disputed American Banco funds. Conversion is defined in *People v. Varallo*, 913 P.2d 1 (Colo.1996) as follows:

> Knowing misappropriation [for which the lawyer is almost invariably disbarred] "consists simply of a lawyer taking a client's money entrusted to him, knowing that it is the client's money and knowing that the client has not authorized the taking." *In re Noonan*, 102 N.J. 157, 160, 506 A.2d 722 (1986). Misappropriation includes "not only stealing, but also unauthorized temporary use for the lawyer's own purpose, whether or not he derives any personal gain or benefit therefrom." *In re Wilson*, 81 N.J. 451, 455 n. 1, 409 A.2d 1153 (1979). The motive of the lawyer is irrelevant in determining the appropriate discipline for knowing misappropriation.

> Moreover, "[i]ntent to deprive permanently a client of misappropriated funds, however, is not an element of knowing misappropriation." *In re Barlow*, 140 N.J. 191, 657 A.2d 1197, 1201 (1995).

A "technical conversion," usually warranting suspension rather than disbarment, is a conversion or misappropriation where the complainant either concedes that the misappropriation was negligent, *People v. Dickinson*, 903 P.2d 1132, 1138 (Colo.1995), or it cannot be proven by clear and convincing evidence that the respondent knowingly converted the funds, *People v. Galindo*, 884 P.2d 1109, 1112 (Colo.1994) (board's conclusion that conversion was negligent rather than knowing was supported by the record and would not be overturned); *People v. Wechsler*, 854 P.2d 217, 220–21 (Colo.1993) (supreme court will not overturn hearing board's conclusion that intentional conversion was not established by clear and convincing evidence unless there is no substantial evidence in the record to support conclusion); *People v. McGrath*, 780 P.2d 492, 493 (Colo.1989)("Indeed, if there were not some lingering doubt about whether the

---

7. The charged violation of Colo. RPC 8.4(h)(other conduct adversely reflecting on fitness to practice law) was pled in the alternative to the Colo. RPC 1.15(d) and Colo. RPC 5.3(b) charges. Accordingly, having found a violation of the two Rules, the charge under Colo. RPC 8.4(h) is dismissed.

respondent engaged in knowing conversion of his client's funds, we would have no hesitation in entering an order of disbarment").

*Varallo,* 913 P.2d at 10–11.

The evidence is clear and convincing that a portion of the disputed funds were withdrawn and expended by Field, with Gray's knowledge, prior to the time either Field or Gray were entitled to do so.[8] The evidence is also equally clear that Gray was convinced that she was entitled to withdraw and use the disputed funds at the time she authorized Field to do so based upon her misunderstanding of the law relating to attorney's charging liens and the applicability of The Rules of Professional Conduct. Notwithstanding her misunderstanding, the misconduct involved the taking of money claimed by the client which the client had not authorized and, as such, constitutes conversion. Because Gray was under the misapprehension that she and Field were entitled to the money, however, her misconduct is negligent rather than knowing. The conversion, under the analysis set forth in *Varallo, supra,* is therefore technical rather than knowing. Gray's conduct violated Colo. RPC 8.4(c).

### III.  ANALYSIS OF DISCIPLINE·

■ The state of mind of the attorney, the degree of harm or potential harm resulting from the misconduct, the impact of the misconduct on the profession, the protection of the public and the mitigating and aggravating factors are the primary considerations evaluated in arriving at the appropriate sanction in this case. The misconduct in this case can be summarized as follows: an inexperienced attorney, dominated by an experienced but suspended attorney, (1) failed to utilize appropriate letterhead in correspondence identifying that the experienced attorney had been suspended, (2) failed to properly supervise the suspended attorney in connection with the handling of disputed funds and allowed the suspended attorney to withdraw and expend disputed funds during the period of dispute which were later determined to belong to the suspended attorney. The evidence presented established that the client was not misled by the letterhead, did not suffer nor was exposed to any potential injury as a consequence of the attorney's actions and the course of action undertaken by the attorney followed research, though faulty, of the applicable law.

The ABA *Standards for the Imposition of Lawyer Sanctions* (1991 & Supp.1992) give guidance in arriving at the presumptive sanction in disciplinary proceedings. Gray's misconduct violated duties to the client and duties to the profession. ABA *Standard* 4.12, 4.13 and 4.14, which apply to violations of duties owed to the client, provide:

4.12  Suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client.

4.13  Reprimand (public censure) is generally appropriate when a lawyer is negligent in dealing with client property and causes injury or potential injury to a client.

4.14  Admonition (private admonition) is generally appropriate when a lawyer is negligent in dealing with client property and causes little or no actual or potential injury to a client.

ABA *Standards* 4.62, 4.63 and 4.64 apply when an attorney lacks candor in communications with a client:

4.62  Suspension is generally appropriate when a lawyer knowingly deceives a client, and causes injury or potential injury to the client.

4.63  Reprimand [public censure] is generally appropriate when a lawyer negligently fails to provide a client with accurate or complete information, and causes injury or potential injury to the client.

4.64  Admonition [private admonition] is generally appropriate when a lawyer engages in an isolated instance of negligence in failing to provide a client with accurate information, and causes little or no actual injury to the client.

---

8. The fact that a court subsequently determined that more than the amount taken by Field and Gray was due and owing under prior legal fee statements does not alter the violation analysis. That analysis must be conducted as of the time the conduct occurred.

ABA *Standards* applying to violations of duties to the profession, 7.2, 7.3 and 7.4 provide:

7.2 Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public or the legal system.

7.3 Reprimand [public censure] is generally appropriate when a lawyer negligently engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system.

7.4 Admonition [private admonition] is generally appropriate when a lawyer engages in an isolated instance of negligence in determining whether the lawyer's conduct violates a duty owed to the profession, and causes little or no actual or potential injury to a client, the public, or the legal system.

In light of the fact that Gray's misconduct was negligent, involved only one client and caused little or no actual harm to either the client, the profession or the legal system, the ABA *Standards* suggest that the presumptive sanction is private admonition. A review of Colorado case law, however, suggests that the sanction for technical conversion of funds is misconduct of a more serious nature, even if negligent, and deviates from the ABA *Standards'* recommendation of private admonition. *See People v. Shidler*, 901 P.2d 477, 479 (Colo.1995)(public censure imposed on attorney for technical conversion of client funds where court considered as mitigation attorney's diagnosis of mental disorder which caused conduct); *People v. Galindo*, 884 P.2d 1109, 1112 (Colo.1994)(suspending the attorney for one year and one day where "respondent's mishandling of funds was the result of neglect rather than dishonesty"); *People v. Wechsler*, 854 P.2d 217, 223 (Colo.1993) (attorney suspended for one year and one day for technical conversion of client funds, failure to deposit funds in trust account and failure to return files upon request); *cf. People v. O'Donnell*, 955 P.2d 53, 59 (Colo.1998)(imposing public censure on attorney respondent pursuant to conditional admission of misconduct for, among other rule violations, failing to promptly refund unearned fees, holding that a public censure is generally warranted "when a lawyer is negligent in dealing with client property and causes injury or potential injury to a client"); *People v. Pooley*, 917 P.2d 712, 713 (Colo.1996)(public censure imposed on respondent attorney pursuant to conditional admission of misconduct for, among other rule violations, failing to refund unearned retainer upon demand, and issuing check drawn on insufficient funds in violation of Colo. RPC 1.15(a) (failure to keep client funds separate from the lawyer's own funds), and Colo. RPC 8.4(c) (engage in conduct involving dishonesty, fraud, deceit, or misrepresentation) and finding that public censure was warranted where there was no harm to third parties); *People v. Mills* 861 P.2d 708, 711 (Colo.1993)(imposing public censure on respondent attorney for improperly asserting a charging lien over client's share of estate proceeds and thereby violating prior rule DR1–102(A)(5), current Colo. RPC 8.4(d)(engaging in conduct prejudicial to the administration of justice) and dismissing charges of failing to promptly deliver funds to client in possession of lawyer or charges of dishonesty, fraud, deceit or misrepresentation); *People v. Smith*, 830 P.2d 1003, (Colo.1992) (respondent attorney suspended for six months for, among other rule violations, filing improper lien against marital residence).

Examination of aggravating and mitigating factors pursuant to 9.22 and 9.32 respectively may enhance or diminish the ultimate sanction. The People argued that Gray engaged in this conduct with a selfish or dishonest motive, *see id. at* 9.22(b), her actions reflect a pattern of misconduct, *see id. at* 9.22(c), and she engaged in multiple offenses, *see id. at* 9.22(d). The PDJ and Hearing Board find no evidence that Gray engaged in the misconduct with a selfish or dishonest motive. Her conduct arose out of a belief that American Banco owed the money to Field, that the Colorado attorney's lien statute authorized her action and that her conduct was in conformity with The Rules of Professional Conduct. Neither does her misconduct show a pattern of misconduct. The several violations supported by the evidence arose from

dealings in a single dispute with a single client over a relative short period of time. Establishing a pattern of misconduct requires evidence of routine and course of conduct reflecting a willingness to repeatedly engage in similar misconduct. Because the People have proven several violations, however, they have established the single aggravating factor of multiple offenses pursuant to ABA *Standards* 9.22(d).

By way of mitigation, Gray had no prior disciplinary record, *see id. at* 9.32(a), there is an absence of a dishonest or selfish motive, *see id. at* 9.32(b), there was full and free disclosure to the disciplinary authorities, *see id. at* 9.32(e), Gray was very inexperienced in the practice of law, having been admitted to the bar in 1996 and having no prior experience as a lawyer before the events at issue in this case, *see id. at* 9.32(f), there has been a delay in the disciplinary proceedings not due to Gray's actions, *see id. at* 9.32(i), and she expressed and displayed remorse for her actions *see id. at* 9.32(*l*).

The most significant factor in the PDJ and Hearing Board's arriving at this sanction decision is Gray's inexperience in the practice of law: she had virtually no experience at the time these events occurred. This, combined with the fact that although she freely acknowledged it was her responsibility to ensure compliance with The Rules of Professional Conduct, she was heavily influenced by Field, a seventeen year veteran of the practice of law, in interpreting the scope and applicability of the rules and the breadth of the attorney's lien statute. Although this decision does not excuse Gray's submission to Field's influence, it cannot and should not be ignored in evaluating the need to protect the public from further misconduct by Gray.

Taking into account the ABA *Standards'* presumptive sanction, the more rigorous sanction derived from Colorado law, and the significant mitigating factors, it is the conclusion of the PDJ and Hearing Board that Gray should be assessed a public censure.

### IV. ORDER AND IMPOSITION OF SANCTION

It is therefore ORDERED:

1. Marci S. Gray is hereby assessed a PUBLIC CENSURE.

2. Respondent is ORDERED to pay the costs of these proceedings;

3. The People shall submit a Statement of Costs within fifteen (15) days of the date of this Order. Respondent shall have ten (10) days thereafter to submit a response thereto.