**The PEOPLE of the State of Colorado, Complainant**

v.

**John A. McNAMARA, Respondent.**

**No. 10PDJ109.**

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

July 15, 2011.

Attorney Regulation. The Hearing Board suspended John A. McNamara (Attorney Registration Number 19382) for one year and one day, all but three months stayed, with the requirement that he then seek reinstatement and thereafter successfully complete a one-year period of probation with conditions, effective December 20, 2011. McNamara spent his client's retainer before earning it and failed to maintain necessary accounting records in one matter. He also neglected his child support obligations. His misconduct constitutes grounds for the imposition of discipline pursuant to C.R.C.P. 251.5 and violated Colo. RPC 1.15(a) and (j) and 3.4(c).

### DECISION AND ORDER IMPOSING SANCTIONS PURSUANT TO C.R.C.P. 251.19(b)

On April 25 to 27, 2011, a Hearing Board composed of David A. Helmer and Mickey W. Smith, members of the bar, and William R. Lucero, the Presiding Disciplinary Judge ("the PDJ"), held a three-day hearing pursuant to C.R.C.P. 251.18. April M. McMurrey appeared on behalf of the Office of Attorney Regulation Counsel ("the People"), and John A. McNamara ("Respondent") appeared pro se. The Hearing Board now issues the following "Decision and Order Imposing Sanctions Pursuant to C.R.C.P. 251.19(b)."

### I. *SUMMARY*

Respondent, a single parent and sole practitioner who conducts his law practice from his apartment while caring for his minor son, admits that he was overwhelmed with his legal and personal responsibilities and thus neglected his child support obligations and the duties he owed to his clients. Although we find that these extenuating circumstances had some bearing on his misconduct, we nevertheless find Respondent violated the following rules: Colo. RPC 3.4(c), by knowingly failing to pay his court-ordered child support, Colo. RPC 1.15(a), by spending his client's retainer before earning it, and Colo. RPC 1.15(j), in one matter, by failing to maintain the necessary accounting records.

The Hearing Board, however, does not find clear and convincing evidence that Respondent provided incompetent legal representation in violation of Colo. RPC 1.1 or that he filed a frivolous lawsuit in violation of Colo. RPC 3.1. Further, while Respondent unwisely failed to determine if a check he had written to the Colorado Supreme Court had cleared prior to the closure of his bank account, the Hearing Board cannot find, under the facts presented at the hearing, that Respondent acted dishonestly in violation of Colo. RPC 8.4(c). Nor does the Hearing Board find that Respondent violated Colo. RPC 1.3 by failing to attend a pretrial conference.

While none of the proven violations, taken individually, would warrant serious discipline, Respondent's failure to abide by the PDJ's orders and his recalcitrance during the pretrial discovery proceedings militates in favor of giving great weight to ABA *Standard* 9.22(e) (bad faith obstruction of the disciplinary process). This significant factor in aggravation leads us to conclude that a suspension for one year and one day, all but three months stayed, is the appropriate sanction. In addition, Respondent must seek reinstatement pursuant to C.R.C.P. 251.29(c). Upon reinstatement to the bar, Respondent must successfully complete a one-year period of probation with conditions.

### II. *PROCEDURAL HISTORY*

On October 5, 2010, the People filed a complaint asserting nine claims, alleging that Respondent violated Colo. RPC 1.1, 1.3, 3.1, 3.4(c), 1.15(a), 1.15(c), 1.15(j) twice, and 8.4(c) by failing to pay court-ordered child support, writing a check to the Colorado Supreme Court on a closed account, and engaging in

misconduct in four separate client matters.[1] Respondent filed an answer on November 12, 2010. On March 28, 2011, the People filed a motion for sanctions based on Respondent's failure to comply with the PDJ's March 21, 2011, order compelling Respondent to attend his deposition.[2] During the hearing on April 25–27, 2011, the Hearing Board heard testimony and considered the People's exhibits 2–8, 13–18B, 20–24, 27, and 30, and Respondent's exhibits A–B, D–G, L–O, Q, S, U–Z, and A 1–A6.[3]

## III. *FINDINGS OF FACT AND RULE VIOLATIONS*

The Hearing Board finds the following facts and rule violations have been established by clear and convincing evidence. Respondent took the oath of admission and was admitted to the bar of the Colorado Supreme Court on May 16, 1990. He is registered upon the official records, attorney registration number 19382, and is thus subject to the jurisdiction of the Hearing Board in these disciplinary proceedings.[4] Respondent's business/home address is 3419 South Uravan Way, Apt. 7–301, Aurora, CO 80013.

### Child Support Matter

█ Respondent and his ex-wife have a minor son. Following the dissolution of Re-

spondent's marriage in 2007, the Arapahoe County Court entered temporary orders in November 2007, requiring Respondent to pay $190.67 for monthly child support to the Family Support Registry.[5] The court then entered permanent orders in September 2008 and specifically ordered Respondent to make a monthly payment of child support in the amount of $194.29.[6] The court also found that Respondent was $623.97 in arrears for child support.

It is undisputed that Respondent made no child support payments for the period of October 2008 to May 2009.[7] After May 2009, Respondent made the following payments: (1) $1,100.00 in June 2009; (2) $362.60 in August 2009; (3) $366.00 in November 2009; and (4) $90.00 in December 2009.[8]

The Family Support Registry's documentation shows that Respondent made only three payments in 2010 totaling $905.00, leaving him $1,270.48 in arrears.[9] Indeed, Respondent made no child support payments in January 2010, April 2010, and from June 2010 until January 2011.[10] In February 2011, Respondent made a payment of $4,654.61, bringing his balance current and eliminating any arrearages.[11]

The People assert that in failing to comply with the court's permanent child support or-

1. The People later dismissed their fourth claim for relief based on Colo. RPC 1.15(c).

2. Respondent did not respond to this motion, which the PDJ will address in a separate order.

3. Respondent failed to adhere to the court-ordered deadline for pre-trial disclosure of his exhibits and first disclosed his exhibits the second day of the hearing. The People objected to the late disclosure of the exhibits. The PDJ admitted Respondent's exhibits over the People's objection after determining that the appropriate sanction would not be preclusion of the evidence but to inform the Hearing Board of Respondent's failure to adhere to deadlines.

4. *See* C.R.C.P. 251.1(b).

5. Ex. G. Respondent was also ordered to pay an additional $500.00 in temporary monthly maintenance to his ex-wife.

6. Ex. 2 (ordering Respondent to pay $181.29 monthly for child support plus $13.00 for arrearage).

7. On May 13, 2009, Respondent disclosed on his attorney registration statement that he was not in compliance with child support orders. Ex. 3. He noted that he would be "caught up by the end of Monday May 18, 2009, if [he were] allowed to earn the second half of a flat fee following a trial on Monday." *Id.*

8. Ex. 4. After making these payments, Respondent was left with an arrearage of $156.88.

9. *Id.*

10. *Id.* Although the allegations and claims in the People's complaint do not cover the June 2010 to January 2011 time period, the People offered this evidence at the hearing to show a pattern of misconduct and noncompliance with child support orders pursuant to ABA *Standard* 9.22(c).

11. Ex. L. Of the $4,654.61 Respondent paid in February 2011, $3,000.00 was for maintenance and $1,654.61 was for child support.

ders, Respondent violated Colo. RPC 3.4(c), which provides that a lawyer shall not knowingly disobey an obligation under the rules of a tribunal. Respondent knew he was obligated to pay child support but argues that he had a good faith basis for not complying with the court's order, namely that his monthly expenses exceeded his income and that he filed for bankruptcy in the fall of 2008. Respondent testified that his monthly income is $3,500.00 to $4,500.00 and his monthly expenses are $3,400.00, not including his child support obligation. Although Respondent filed a motion to modify the due date of his child support obligation, he never filed a motion to modify the amount of child support based on his financial situation.[12] Respondent also contests the validity of the court's child support order,[13] contending that he did not make payments from October 2008 to May 2009 because he had appealed the order and believed it was stayed pending appeal.

The Hearing Board finds clear and convincing evidence that Respondent was aware of his child support obligations and knowingly disregarded these obligations by failing to make any child support payments from October 2008 to May 2009, and in July 2009, September 2009, October 2009, January 2010, and April 2010.[14] Although Respondent states that he was financially unable to make the payments, his financial affidavit demonstrates otherwise.[15] In addition, Respondent's argument that he believed the child support order to be stayed from October 2008 to May 2009 pending appeal is without merit, as he did not appeal the order until

October 2009.[16] Accordingly, Respondent violated Colo. RPC 3.4(c);[17] however, we note that as of February 2011 Respondent was current on his court-ordered child support payments.

## The Cole Matter

■ In 2007, Mitchell Cole ("Cole") hired Respondent to represent him in post-dissolution matters involving his ex-wife ("Ms. Cole") and minor daughter.[18] Cole's dissolution proceedings were initially conducted in California. In May 2000, at the conclusion of those proceedings, the California court entered an order ("May 2000 Order") stating that at all times not designated with Cole, their minor daughter should be with Ms. Cole and that the parties should inform each other of their current addresses.[19] In 2000, Ms. Cole and their daughter moved to Colorado, with Cole's consent, and the Colorado courts took jurisdiction over post-dissolution matters.

In 2006, after contentious and extended litigation resulting in a contempt hearing, the parties entered into a stipulation requiring Ms. Cole to provide Cole with their daughter's school year calendar within ten days of receipt and to bear equally the costs of their daughter's air travel.[20] The stipulation further provided that if either party filed a motion for contempt, the prevailing party would be entitled to $1,000.00 in liquidated damages, reasonable attorney's fees, and

12. Exs. 7 & 11.

13. The Hearing Board does not address the legitimacy of the trial court's order; rather, we treat it as a valid order and enforceable subject to appellate review.

14. Ex. 4.

15. Ex. A. For instance, Respondent could have sacrificed internet and cable in order to meet his monthly child support obligations. Additionally, Respondent admittedly took home $4,500.00 some months—$1,000.00 more than his total monthly expenses.

16. Respondent is mistaken about the date he filed his appeal. His notice of appeal was not filed in October 2008, as he claims, but rather on

October 29, 2009. Ex. 8. The appeal was ultimately dismissed in October 2010 because Respondent did not pay for the transcript of the underlying proceedings. Exs. 9 & 10. Thus, the court's child support order remains valid and in effect.

17. *See In re Green*, 982 P.2d 838, 839 (Colo.1999) (finding that by willfully failing to comply with court-ordered child support obligations, the respondent violated Colo. RPC 3.4(c)); *People v. Hanks*, 967 P.2d 144, 145 (Colo.1998) (same).

18. The case was styled *In re the Marriage of Cole*, case number 01DR1328.

19. Ex. 13.

20. *Id.*

costs.[21]

In September 2008, Cole learned for the first time that Ms. Cole had enrolled their daughter in a Virginia boarding school the prior month. Cole believed his former wife was in violation of the May 2000 Order provision stating that their daughter should be with one or the other parent at all times. Respondent discussed these matters with Cole, who directed Respondent to file a punitive contempt citation on his behalf.[22] Respondent did so in December 2008. In the citation, Respondent asserted that Ms. Cole's behavior violated the May 2000 Order, increased the distance between Cole and his child, increased the travel expenses for visitation, and made it difficult for Cole to communicate with his daughter, who was subject to telephone call restrictions at the school.[23] Respondent argued that a temporary injunction pursuant to C.R.S. § 14–10–107 was in effect, which prohibited either party from removing their daughter from Colorado without consent of the other party or written court order.

At an advisement hearing on January 20, 2009, the court informed Respondent that the temporary injunction was no longer in effect, as it had not been made permanent.[24] Respondent stated that he was not relying entirely on section 14–10–107 as grounds for the contempt citation.[25] In spite of the court's expressed concerns about the contempt citation, Respondent persisted and the matter was set for a citation hearing on March 17, 2009.[26]

During the citation hearing, Respondent reiterated the arguments made in his contempt citation, save for the section 14–10–107 argument.[27] At the conclusion of the hearing, the court determined that no order entered in the case prohibited Ms. Cole from sending her daughter to boarding school outside of Colorado, Cole could have filed a motion to prohibit his daughter's removal rather than a contempt citation, Ms. Cole did provide Cole with the calendar by email in September 2008, and the child's attendance at boarding school had not affected Cole's visitation.[28] Although the court stated that it believed the reasons that Cole gave for filing this motion, it ultimately concluded that Respondent's contempt citation was "not proven ... not founded ... spurious ... [and] vexatious."[29] The court further ordered Cole to pay $9,369.50 in attorney's fees and $1,000.00 in liquidated damages.[30]

Respondent appealed this order, contending that the trial court erred in determining Respondent did not meet his burden for the contempt claim and in awarding attorney's fees against him individually.[31] The appeal is still pending.

The People assert that when Respondent filed the contempt citation based upon his interpretation of the May 2000 Order, he violated Colo. RPC 3.1, which states that "a lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, mod-

21. *Id.*

22. Respondent also testified Cole was very angry that he had learned after the fact of his daughter's enrollment in a boarding school outside of Colorado and that he had not been provided with the school calendar until September 2008. Cole believed his ex-wife was purposefully hiding information from him.

23. *Id.;* Ex. 14 at 12:13–13:5; 24:22–25:16.

24. Ex. 14 at 26:11–19.

25. *Id.* at 24:22–23.

26. *Id.* at 30:6–11.

27. Ex. 15. Respondent testified at the disciplinary hearing that he abandoned this argument after the court advised him it was inapplicable.

28. Ex. 15 at 156:8–157:11.

29. *Id.* at 158:9–159:9. The court's ruling, however, is not binding on the Hearing Board because the burden of proof in a civil action is generally by a preponderance of the evidence, while the burden of proof in an attorney disciplinary proceeding is typically by clear and convincing evidence. *See In re Egbune,* 971 P.2d 1065, 1067 (Colo.1999).

30. Ex. 15 at 158:9–14; Ex. U.

31. Ex. W.

ification or reversal of existing law."[32] The People argue that even though the appeal is pending and the trial court's order may be reversed, Respondent can still be disciplined for violating Colo. RPC 3.1. The Hearing Board agrees.

■ However, the evidence presented does not clearly and convincingly demonstrate Respondent brought a frivolous proceeding in violation of Colo. RPC 3.1. Rather, we find that the balance of the evidence indicates that Respondent had a proper basis for filing the punitive contempt citation because he had a good faith belief that: (1) a lawful court order existed; (2) Ms. Cole was aware of that order; (3) Ms. Cole was able to comply with the order; and (4) Ms. Cole arguably willfully refused to comply with the order.[33]

Respondent testified that he consulted with Cole prior to filing the contempt citation, that Cole was angry and concerned that Ms. Cole was allegedly intentionally hiding information from him regarding his daughter's schooling and whereabouts, and that Cole wanted to file the citation. Both of the parties were aware of the May 2000 Order and presumably had been complying with the

order until August 2008. Respondent and his client interpreted Ms. Cole's actions to be a willful refusal to comply with the order. Under these circumstances, we do not conclude that Respondent acted in bad faith. Further, the May 2000 Order is susceptible to different interpretations and we cannot find that Respondent lacked a rational argument supporting the merits of the citation in violation of Colo. RPC 3.1.[34]

The People next assert Respondent violated Colo. RPC 1.1, which provides that a "lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." The People claim that Respondent's initial reliance on C.R.S. § 14–10–107 and his failure to file a motion to prohibit Ms. Cole from sending her daughter to Virginia were incompetent.[35] With respect to Respondent's decision to file the contempt citation and his initial reliance on C.R.S. § 14–10–107, we have already found that Respondent did not file a frivolous pleading. For the same reasons, the Hearing Board cannot conclude that Respondent incompetently represented Cole in violation of Colo. RPC 1.1.[36]

---

**32.** The People, in closing, acknowledged that the May 2000 Order is open to interpretation but argued the logical conclusion of Respondent's interpretation would be that the daughter could not leave Ms. Cole's house to attend any school. Respondent asserts that the People's interpretation is overly narrow, and he construes the May 2000 Order to prohibit Cole's daughter from attending school in Virginia because she would no longer be under either parent's care but rather under the care of a school administrator.

**33.** The elements of punitive contempt are: "(1) the existence of a lawful order of the court; (2) contemnor's knowledge of the order; (3) contemnor's ability to comply with the order; and (4) contemnor's willful refusal to comply with the order." *In re Marriage of Nussbeck*, 974 P.2d 493, 497 (Colo.1999).

**34.** *See W. United Realty, Inc. v. Isaacs*, 679 P.2d 1063, 1069 (Colo.1984) ("frivolous" means no rational argument can be made, based upon the evidence, in support of the claim or defense); *Barrett v. Va. State Bar ex rel. Second Dist. Comm.*, 272 Va. 260, 634 S.E.2d 341, 348 (2006) ("An erroneous position is not necessarily a frivolous position."); *see also* Colo. RPC 3.1 cmts. 1 & 2 (noting a legal action cannot be considered frivolous if a lawyer is able to support that action

by a good faith argument for an extension, modification, or reversal of existing law in light of the law's ambiguities and potential for change). An action is not necessarily frivolous where the attorney does not believe that his client's position will ultimately prevail. Colo. RPC 3.1 cmt. 2.

**35.** As noted, Respondent withdrew his arguments based on C.R.S. § 14–10–107 after the advisement hearing. Although C.R.S. § 14–10–131 allows for the modification of child custody, Respondent testified that he did not file a motion contesting his daughter's removal or for modification of child custody as he felt, given the contentious history between the parties and based on his discussions with Cole, that a contempt citation was proper. *See* Colo. RPC 1.3 cmt. 1 ("A lawyer is not bound, however, to press for every advantage that might be realized for a client. For example, a lawyer may have authority to exercise professional discretion in determining the means by which a matter should be pursued.").

**36.** *See In re Foster*, 253 P.3d 1244, 1256 (Colo. 2011) ("While the pursuit of losing arguments may not be a recipe for success, neither does it bear the hallmark of punishable or necessarily undesirable litigation conduct.").

## The Jones Matter

■ Respondent maintains a COLTAF account with JP Morgan Chase & Company ("Chase"). On February 10, 2010, Respondent's client ("Jones")[37] paid Respondent $500.00 by check pursuant to a flat fee agreement. That same day, Respondent deposited and withdrew $500.00 from his COLTAF account. On February 18, 2010, Chase returned the $500.00 check because Jones had insufficient funds to cover it, causing two of Respondent's checks to bounce.[38]

After Chase notified them of the overdraft, the People asked Respondent, pursuant to Colo. RPC 1.15(j), for a written response, copies of the returned checks, his last three monthly COLTAF statements, copies of his record keeping system that coincided with his COLTAF statements, and his trust reconciliation documentation.[39] In response, Respondent explained that Jones paid him $500.00, representing the first of four installments under a flat fee agreement, and that he had spent the funds a week earlier, thereby causing the overdraft in his account when Jones's check was returned.[40] Respondent attached a copy of his February 2010 COLTAF statement but did not provide the People with the other requested documents.[41]

During the course of these proceedings, the People again demanded that Respondent disclose his accounting documents, fee agreement, and client's identity. Respondent again refused to comply. He also refused to answer any questions during his depositions,

asserting his Fifth Amendment privilege against self-incrimination because he feared that the People would improperly expand their investigation and possibly add claims to the complaint. Respondent also testified that he did not trust the People and did not want them to "pump Jones for bad information." The People contend that Respondent asserted his Fifth Amendment rights during the discovery process in bad faith, since he freely testified to the Jones matter at trial.[42]

Respondent testified that his fee agreement with Jones stated he was entitled to the $500.00 upon his entry of appearance and that this type of agreement is standard among attorneys.[43] Respondent also testified that he had earned the fee on the day he deposited the $500.00 because he had already interviewed the client, prepared an entry of appearance in this matter, paid the filing fee, and completed legal research. Respondent stated that he billed Jones for the $500.00.

The People assert that Respondent's conduct violated Colo. RPC 1.15(a), which requires a lawyer to "hold property of clients that is in a lawyer's possession in connection with a representation separate from the lawyer's own property."[44] The People reason that when Respondent exercised unauthorized dominion or ownership over the $500.00 before earning it, he negligently converted the funds. The People also ask the Hearing Board to draw from Respondent's silence and refusal to produce the documents the adverse inference that Respondent did not have con-

37. Respondent never provided the People or the Hearing Board with Jones's first name.

38. The two checks presented for payment on Respondent's COLTAF account and returned unpaid were: (1) check number 1870 for $20.00 and (2) check number 1866 for $150.00.

39. Ex. 24.

40. Ex. 27.

41. *Id.*

42. The People objected to Respondent's testimony on the Jones matter at the hearing because he asserted his Fifth Amendment right against self-incrimination at his depositions. The PDJ allowed Respondent's testimony over objection because he determined that the appropriate sanc-

tion would not be preclusion of Respondent's testimony but rather to sanction Respondent by notifying the Hearing Board of Respondent's conduct.

43. Respondent testified at the hearing that he cannot find the fee agreement.

44. At the hearing, Respondent asked the PDJ to dismiss the People's fifth (Colo. RPC 1.15(a)) and sixth (Colo. RPC 1.15(j)) claims for relief, asserting that they are vague and fail to notify Respondent as to the timeframe involved. At the disciplinary hearing, the PDJ denied Respondent's motions to dismiss, as the deadline for pretrial motions and discovery had passed. The Hearing Board also finds that the People's complaint is not vague, the complaint clearly references the timeframe in question, and Respondent therefore had enough information to proceed with a defense.

sent or authority to spend Jones's fee at the time he deposited the $500.00 into his Chase account.

■ When confronted with the tension between a party's invocation of the Fifth Amendment privilege and an opposing party's need for discovery, a court must determine: (1) whether the opposing party has a substantial need for the information withheld; (2) whether that party has an alternative means of obtaining the information; and (3) whether any effective, alternative remedy, short of dismissal, is available.[45] A court "must ensure that 'the detriment to the party asserting [the privilege is] no more than is necessary to prevent unfair and unnecessary prejudice to the other side.' "[46] The appropriate remedy depends on the facts and circumstances of each case.[47] In some cases, it is appropriate for the fact finder to draw an adverse inference from the party's silence, substantially leveling the playing field for the opposing party.[48]

The Hearing Board finds that the People had a substantial need for the information that Respondent withheld, as their claim turned on whether Respondent had the authority to spend the fee at the time he made the deposit, and without the client's identity or the fee agreement the People could not make this determination. Additionally, the People's investigator testified that she took numerous measures to determine the identity of Respondent's client but was unable to do so without Respondent's cooperation. The People had no alternative means of obtaining the identity of the client or a copy of the fee agreement without Respondent's cooperation.

Based upon the evidence presented, the Hearing Board finds that Respondent performed enough work to earn $500.00, but by failing to produce the fee agreement, Respondent failed to adequately demonstrate that he had authority to spend the fee the day he deposited it. In light of the prejudice to the People resulting from Respondent's refusal to disclose information, the Hearing Board determines that an adverse inference is appropriate under the circumstances and infers that Respondent did not have Jones's consent to use any of the funds removed from Respondent's COLTAF account. Accordingly, the Hearing Board finds Respondent negligently converted Jones's funds in violation of Colo. RPC 1.15(a).

■ The Hearing Board also heard testimony from Respondent that he is not in compliance with Colo. RPC 1.15(j), which places specific requirements upon solo practitioners for safekeeping property of clients and third parties.[49] Specifically, Respondent testified that he keeps track of client funds held in trust on sheets of yellow notebook paper—one for each client. Respondent places the notebook paper and photocopies of bills in each client's file. Respondent also stated that he does not have a system in place that affords him a complete view of the money he is holding in his accounts, as he does not have the funds to purchase computer hardware or software. Respondent admitted that for the last six months he has not reconciled his bank statements. Respondent further admitted that he has not asked for help in setting up an accounting system at his office, nor has he attended any CLEs or bar association events on this topic. As such, we find that Respondent has violated the requirements of Colo. RPC 1.15(j) by failing to abide by the proper accounting and record keeping requirements designed to protect his clients' financial and legal interests.

45. *Steiner v. Minn. Life Ins. Co.*, 85 P.3d 135, 141 (Colo.2004). The "privilege against self-incrimination has long been applied in the civil context." *Id.* at 139. This privilege is one which should be "exercised without penalty," and courts should avoid the imposition of a sanction which makes this assertion costly. *Id.* at 140.

46. *Id.* at 141 (citing *Sec. & Exch. Comm'n v. Graystone Nash, Inc.*, 25 F.3d 187, 192 (3d Cir. 1994)).

47. *Id.*

48. *Id.* (citing *Sec. & Exch. Comm'n v. Colello*, 139 F.3d 674, 677 (9th Cir.1998)); *see also In re Bass*, 142 P.3d 1259, 1263 (Colo.2006) (determining that the PDJ was well within his discretion when applying the sanction of adverse inference of disability based on the respondent's refusal to cooperate with independent medical examiner).

49. Colo. RPC 1.15(j)(1)-(8).

### Check to Colorado Supreme Court

■ On February 2, 2010, Respondent presented a check, drawn on Respondent's personal First Bank account, to the Colorado Supreme Court ("Supreme Court") for $225.00 for a filing fee in a case. The Supreme Court did not deposit this check until February 18, 2010. On June 2, 2010, Respondent's check was returned to the Supreme Court. The Supreme Court never notified Respondent that his check did not clear.

On April 21, 2010, Respondent presented a $50.00 check to the Supreme Court for library fees, drawn on Respondent's personal Academy Bank account. This check was returned to the Supreme Court for insufficient funds.[50] Again, the Supreme Court did not alert Respondent that his check failed to clear but instead notified the People that Respondent had presented two insufficient funds checks.[51] On March 21, 2011, after the complaint was filed in this case, Respondent paid the Supreme Court with three money orders to cover these checks, any insufficient fund fees, and his library bill balance.[52]

Respondent refused to give the People documents or answer questions about either of these checks at his depositions, again asserting his Fifth Amendment right against self-incrimination. However, Respondent offered evidence at trial as to this matter. Respondent testified that his First Bank account was open and contained sufficient funds to cover the $225.00 check at the time it was written. At the hearing, he presented two letters from First Bank showing this account was open on February 2, 2010, when he wrote the check. His account was closed on February 18, 2010, "due to the manner in

which [the account had] been handled."[53] Respondent testified the account was closed due to overdrafts.

On February 23, 2010, First Bank sent a letter to Respondent notifying him that when his account was closed a positive balance was left to cover outstanding checks and giving him a refund of $109.53.[54] Because he received a refund, Respondent assumed all the checks he had written on the account had cleared. Respondent admitted that once he learned that his account had been closed, he should have, but did not, go back to his First Bank account statements to verify that all the checks he had written prior to closing had cleared.

The People argue that Respondent violated Colo. RPC 8.4(c), which provides that it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit, or misrepresentation. The People's claim is premised on the allegation that Respondent wrote a check to the Supreme Court on a closed account. While Respondent refused to provide bank statements to the People yet later offered correspondence from the bank in these proceedings,[55] the People admit they could have obtained the statements directly from the bank revealing that the account was, in fact, not closed when the check was written.[56] The People concede that they were unable to prove by clear and convincing evidence that Respondent knowingly presenting a check to the Supreme Court on a closed account. However, at the hearing the People asked the PDJ to conform the complaint to the evidence pursuant to C.R.C.P. 15(b) and find that Respondent was reckless in not ensuring the check had cleared prior to the account's closing.[57] The

---

50. The People offered this second check as evidence of a pattern of misconduct pursuant to ABA *Standard* 9.22(c).

51. Ex. 18.

52. Exs. 20, 21, & 22.

53. Ex. Z.

54. *Id.*

55. Apparently, Respondent's First Bank statements were not in his possession and, although

he subpoenaed these statements approximately one day before the hearing, they never arrived.

56. The People admitted that they had an alternative means of obtaining these bank records by subpoenaing them directly from First Bank but chose not to do so. Accordingly, the Hearing Board will not draw an adverse inference here. *See Steiner*, 85 P.3d at 141.

57. The People moved for amendment of the pleadings orally during their closing argument. Respondent did not object to such amendment during the hearing.

People claim that such an amendment is proper, as Respondent was on notice throughout this proceeding that he was being charged with an Colo. RPC 8.4(c) violation for the check written to the Supreme Court and thus would not be prejudiced by this amendment.

C.R.C.P. 15(b) permits amendment of the pleadings when "issues not raised by the pleadings are tried by express or implied consent of the parties. . . ." An amendment may be made upon a motion by any party at any time during the proceedings, even after judgment.[58] Such an issue, however, must be intentionally and actually tried; it is not enough that a party present some evidence germane to the issue sought to be raised.[59] Here, the issue of whether Respondent was reckless in failing to monitor his closed account was not intentionally and actually tried throughout the disciplinary hearing. The People did not elicit testimony from Respondent on direct examination indicating he should have looked at his First Bank account statement to determine whether all his checks had cleared. In fact, it was not until the People's cross-examination of Respondent on the last day of the hearing that the issue of Respondent's reckless monitoring of his bank account arose. Thus, the PDJ cannot say the issue was intentionally and actually tried, so an amendment is not appropriate here.

Accordingly, the Hearing Board finds the People have failed to demonstrate by clear and convincing evidence that Respondent knowingly wrote a check to the Supreme Court on a closed account in violation of Colo. RPC 8.4(c).

### Juvenile Matter

■ In 2008, Respondent represented a juvenile in a criminal matter for a $2,500.00 flat fee. Respondent testified that the flat fee agreement entitled him to receive $1,250.00 on his first entry of appearance and $1,250.00 at the conclusion of the case. The juvenile's family paid the entire flat fee with a credit card. Respondent deposited the fee into his COLTAF account. After entering his appearance, Respondent withdrew $1,250.00 and sent the family a bill for this amount.[60]

A pretrial conference was set in the matter for April 23, 2008. Respondent failed to appear on time for this hearing. The juvenile's family called Respondent from the court to notify him about the hearing. Respondent immediately went to the court and was able to reschedule the hearing. Respondent admitted that he failed to properly calendar this hearing and as a result failed to timely appear. The People did not present any evidence that Respondent engaged in additional conduct that compounded this error.

In June 2008, the juvenile's family terminated Respondent's services and asked for a full refund of the flat fee. Respondent agreed to refund the remaining unearned $1,250.00 balance and sent the family a check. Rather than cashing the check, the family contacted the credit card company, which refunded $2,500.00 to them. After Respondent sent the credit card company a copy of his bill, the company returned the $2,500.00 to Respondent. Respondent gave the family another check for $1,250.00 but they did not cash this check until September 2008.[61]

Although Respondent did give the People his accounting records from January 2008 to June 2008, he did not provide additional COLTAF accounting records requested by the People.[62] Respondent claims that he

---

**58.** C.R.C.P. 15(b). C.R.C.P. 15(b) has been interpreted "to provide that when an issue is tried before the court without timely objection or motion, then the issue is deemed properly before the court despite any defect in the pleading." *Great Am. Ins. Co. v. Ferndale Dev. Co.*, 185 Colo. 252, 254, 523 P.2d 979, 980 (1974).

**59.** *Bill Dreiling Motor Co. v. Shultz*, 168 Colo. 59, 61–65, 450 P.2d 70, 71–73 (1969); *Maxey v.*

*Jefferson Cnty. Sch. Dist. No. R1*, 158 Colo. 583, 585, 408 P.2d 970, 971 (1965).

**60.** Exs. Q & A6.

**61.** *Id.*

**62.** The Hearing Board notes that Respondent refused to cooperate with the People and to comply with their request for documentation re-

withheld these documents because the People's complaint was vague and he was unable to determine from its allegations to which of his clients and to which timeframe the People were referring.[63]

The People maintain that Respondent failed to act with reasonable diligence and promptness in representing his juvenile client in violation of Colo. RPC 1.3 when he failed to appear at the pretrial conference. The Hearing Board does not find Respondent failed to act with reasonable diligence in representing the juvenile based upon an isolated failure to timely attend one court hearing.[64] Although Respondent was surely negligent in failing to properly calendar this pretrial hearing—an oversight we do not condone—he immediately went to the court that same day and requested, and was able, to continue the pretrial hearing. Therefore, we do not find that Respondent violated Colo. RPC 1.3.

In closing argument, the People conceded that they were unable to meet their burden on their Colo. RPC 1.15(j) claim, which alleged that Respondent did not maintain the required trust account records in this client matter. Indeed, the People admitted they were unable to offer any evidence demonstrating Respondent's lack of compliance with this rule during his representation of this client. Based upon the People's concession, the Hearing Board finds no violation of Colo. RPC 1.15(j).

## IV. SANCTIONS

■ The American Bar Association *Standards for Imposing Lawyer Sanctions* (1991 & Supp. 1992) ("ABA *Standards*") and Colorado Supreme Court case law govern the selection and imposition of sanctions for lawyer misconduct. ABA *Standard* 3.0 mandates that, in selecting the appropriate sanction, the Hearing Board consider the duty breached, the injury or potential injury caused, Respondent's mental state, and the aggravating and mitigating evidence.

### ABA *Standard* 3.0—Duty, Injury, and Mental State

*Duty:* By violating Colo. RPC 3.4(c), 1.15(a), and 1.15(j), Respondent breached his duties to his clients and to the legal system by negligently converting Jones's funds, failing to pay court-ordered child support, and failing to maintain proper accounting records.

*Mental State:* According to the ABA Standards, "knowledge is the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result."[65] Here, Respondent acted with conscious awareness when he failed to pay court-ordered child support. Respondent negligently converted Jones's retainer when he deposited and withdrew the retainer on the same day when he had no authority to spend the funds. Respondent was negligent with respect to his failure to maintain required accounting records during his representation of Jones.

*Injury:* Respondent caused actual injury to his minor child by failing to pay court-ordered support to which his child was enti-

garding this claim. This lack of cooperation does not go unnoticed and will be weighed as an aggravating factor pursuant to ABA *Standard* 9.22(e).

**63.** At the hearing, Respondent asked the PDJ to dismiss the People's eighth (Colo. RPC 1.3) and ninth (Colo. RPC 1.15(j)) claims arising out of the juvenile matter, asserting the supporting allegations in the complaint are vague. As discussed, the PDJ denied Respondent's motions to dismiss. In addition, the Hearing Board notes that Respondent should have been able to determine to which client the complaint was referring, as his deposition had been taken multiple times and he offered testimony at the disciplinary hearing as to the proper client. At the hearing,

Respondent disclosed that he entered into a diversion agreement with the People in regard to this same client and that the People brought this claim as a result of his failure to comply with the diversion requirements. The Hearing Board thus finds that Respondent had ample notice as to the client the People referenced in their complaint.

**64.** *See In re PRB*, 181 Vt. 625, 925 A.2d 1026, 1028–29 (2007) (finding attorney missing one deadline but working to remedy the error constituted a single isolated act of negligence but not misconduct under RPC 1.3). By its determination, the Hearing Board by no means intends to excuse single acts of negligence by attorneys.

**65.** ABA *Standards* section IV, Definitions.

tled. Respondent caused potential harm to Jones by spending his retainer before he had earned the funds. In addition, Respondent caused potential injury to all of his clients by failing to maintain appropriate accounting records demonstrating that his clients' funds were kept separately and were appropriately safeguarded.

### ABA *Standard* 3.0—Aggravating & Mitigating Factors

Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. Mitigating factors are any considerations or factors that may justify a reduction in the degree of discipline imposed. The Hearing Board considers evidence of the following aggravating and mitigating circumstances in deciding the appropriate sanction.

*Pattern of Misconduct—9.22(c):* Respondent engaged in a pattern of misconduct by failing to pay court-ordered child support. Respondent failed to make any child support payments from October 2008 to May 2009, in July 2009, September 2009, October 2009, January 2010, April 2010, and again from June 2010 to January 2011. However, the Hearing Board does not find that Respondent's tendering of two insufficient fund checks to the Supreme Court represents a pattern of misconduct.

*Multiple Offenses—9.22(d):* Respondent was found to have violated three Rules of Professional Conduct in this matter (Colo. RPC 3.4(c), 1.15(a), and 1.15(j)).

*Bad Faith Obstruction of the Disciplinary Proceeding—9.22(e):* Throughout the disciplinary process, Respondent engaged in behavior that obstructed the proceedings. Respondent refused to cooperate with the

People by failing to give them requested documents in the course of their investigation, including his personal bank and COLTAF account records and fee agreements. He also refused to disclose the identity of his client in the Jones matter.

Likewise, Respondent refused to attend his first scheduled deposition on January 25, 2011, after agreeing to do so.[66] The deposition was reset for March 16, 2011, and again he failed to attend.[67] On March 21, 2011, the PDJ issued an order compelling Respondent to attend his deposition set for March 25, 2011. Respondent attended this deposition but refused to produce any subpoenaed documents and refused to answer any of the People's questions due to the presence of an investigator from the People's office and a Colorado state patrol officer.[68] Respondent was again ordered by the PDJ to attend his fourth scheduled deposition on April 11, 2011. At this deposition, Respondent refused to produce subpoenaed documents and answer questions on certain matters, asserting his Fifth Amendment right against self-incrimination. However, at the hearing, Respondent freely waived this privilege and offered testimony on the matters for which he had asserted the privilege. The Hearing Board finds Respondent's assertion and subsequent revocation of his Fifth Amendment right an abuse of the privilege and nothing more than an effort to thwart discovery.

Finally, Respondent did not heed court-ordered deadlines pertaining to written discovery, exhibits, stipulations, and pretrial briefs.[69] Respondent did not file his exhibits prior to trial. In fact, Respondent first brought his exhibits on the second day of the hearing, and, rather than striking the exhibits for late disclosure, the PDJ admitted the majority of Respondent's exhibits into evi-

---

**66.** Respondent claims he did not attend this deposition even though he agreed to the date because he never received a notice of the deposition.

**67.** Respondent asserts that he believed this deposition was stayed pending a ruling on his motion to recuse. However, the Hearing Board finds this excuse lacks merit, as Respondent admitted that he did not file the motion to recuse prior to the deposition.

**68.** Respondent could cite no authority that would permit him to refuse to answer questions because of the presence of a second investigator or a state patrol officer.

**69.** Respondent was granted his request to file additional written discovery; however, he never issued any written discovery to the People. Respondent also did not file a hearing brief prior to trial.

dence after taking all the circumstances into account, including the interests of justice, proportionality, culpability, and Respondent's right to his day in court.[70] The PDJ notes that Respondent did not bring the proper number of exhibit copies, which forced the PDJ's staff to expend time and resources to provide the People and the members of the Hearing Board with copies.[71] Accordingly, the Hearing Board accords this factor considerable weight in its analysis.

*Substantial Experience in the Practice of Law—9.22(i):* Respondent had been practicing law for over twenty-one years at the time of his misconduct in this case.

*Absence of a Prior Disciplinary Record— 9.32(a):* Respondent has not been disciplined in twenty-one years of practice.[72]

*Timely Good Faith Effort to Make Restitution or Rectify Consequences of Misconduct—9.32(d):* Respondent voluntarily paid the entire arrearage of his child support in February 2011 and his balance owing to the Colorado Supreme Court in March 2011. Because Respondent's efforts were made close to a year after the obligations were due and only after a disciplinary proceeding was instituted against him, the Hearing Board accords this factor minimal weight in its analysis.[73]

*Remorse—9.32(l):* The Hearing Board also will not consider remorse a significant mitigating factor in this case. Although Respondent exhibited remorse for his failure to make child support payments, for the insufficient fund checks he wrote to the Supreme Court, and for his "late attendance" at the pretrial conference in the juvenile matter, he did not exhibit any remorse for his other misconduct or for his recalcitrance during the discovery phase of this proceeding.

### Sanctions Analysis under ABA *Standards* and Case Law

ABA *Standard* 6.22 provides: "Suspension is appropriate when a lawyer knowingly violates a court order or rule, and there is injury or potential injury to a client or a party, or interference or potential interference with a legal proceeding." Similarly, ABA *Standard* 4.12 provides that suspension "is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client."

 Colorado law supports suspending an attorney who negligently converts client funds.[74] The most important factor in determining the appropriate level of discipline in a case where there is a conversion is "whether the respondent's misappropriation of client funds was knowing, in which case disbarment is the presumed sanction, or whether it was reckless, or merely negligent,

---

70. *See Kwik Way Stores, Inc. v. Caldwell,* 745 P.2d 672, 677 (Colo.1987) (noting sanctions "should be applied in a manner that effectuates proportionality between the sanction imposed and the culpability of the disobedient party").

71. The Hearing Board recessed for over two hours in order to permit the PDJ's staff to copy Respondent's exhibits for the People and the Hearing Board. The PDJ's staff made a total of 894 copies for Respondent.

72. Although Respondent was subject to a diversion, a diversion is not considered a form of discipline but rather an alternative to discipline. C.R.C.P. 251.13(c).

73. *See In re Fischer,* 89 P.3d 817, 821 (Colo. 2004) ("Restitution prior to the initiation of disciplinary proceedings ... present[s] the clearest case for mitigation, while restitution later in the proceedings present[s] a weaker case.") (internal citations omitted); ABA *Standard* 9.32 cmt. (noting restitution made later during process presents weaker case of mitigation); ABA *Standard* 9.4 cmt. ("Lawyers who make restitution only after a disciplinary proceeding has been instituted against them ... cannot be regarded as acting out of a sense of responsibility for their misconduct, but, instead, as attempting to circumvent the operation of the disciplinary system. Such conduct should not be considered in mitigation.").

74. *People v. McGrath,* 780 P.2d 492, 493 (Colo. 1989) (finding suspension fitting where lawyer knew or should have known that he was dealing improperly with client property); *People v. Varallo,* 913 P.2d 1, 11 (Colo.1996) (noting an attorney's technical conversion of client funds warrants suspension); *People v. Dickinson,* 903 P.2d 1132, 1138 (Colo.1995) (holding that negligent commingling and misappropriation of client funds warrants three-year suspension); *People v. Wechsler,* 854 P.2d 217, 222–23 (Colo.1993) (finding suspension appropriate where conversion was not intentional or willful).

suggesting that a period of suspension is adequate."[75] A "technical conversion," where the respondent either concedes negligence or the People cannot prove by clear and convincing evidence that the respondent knowingly converted the funds, usually warrants suspension.[76] The Hearing Board has found, based on an adverse inference, that Respondent negligently converted Jones's funds and concludes, in light of sanctions levied in more serious cases [77], that a shorter period of suspension is warranted and sufficient to protect the public in this case.

In addition, case law supports suspension for an attorney's failure to pay court-ordered child support. In *In re Green*, the Supreme Court suspended an attorney for one year and one day for failing to pay court-ordered child support.[78] The attorney's child support arrearages in *Green* totaled $11,094.68 and spanned a period of five years.[79] In contrast, in *People v. Tucker*,[80] the Supreme Court upheld a hearing board's finding of a six-month suspension as appropriate where the attorney, who had been disciplined previously, knowingly violated a court order to pay child support. There, the back child support was less than $8,000.00 and extended over a one-year period.[81] Because the magnitude of the attorney's willful failure to pay child support in *Green* was more egregious in terms of amount and length than Respondent's, we find *Tucker* more analogous. Here, Respondent was behind $3,167.13 [82] in support payments over an eight-month period, and his balance was paid in full prior to the disciplinary hearing. Accordingly, a less severe suspension is appropriate here.[83]

75. *People v. Schaefer*, 938 P.2d 147, 149 (Colo. 1997) (citations omitted).

76. *Id.* at 150 (citations omitted).

77. *See McGrath*, 780 P.2d at 493–94 (finding suspension of one year and one day warranted where attorney commingled and technically converted client funds and his conduct was aggravated by his deceit and misrepresentation, as well as by his prolonged neglect of a legal matter entrusted to him); *Schaefer*, 938 P.2d at 150 (suspending attorney for two years for negligently mishandling client funds, where, in aggravation, attorney had an arrogant attitude regarding his ethical responsibilities and believed that he was above complying with lawyers' fiduciary responsibilities); *People v. Zimmermann*, 922 P.2d 325, 329–30 (Colo.1996) (suspending attorney for one year and one day with conditions of reinstatement for reckless conversion of client funds in over ten instances); *People v. Galindo*, 884 P.2d 1109, 1112 (Colo.1994) (determining a suspension lasting one year and one day was appropriate for an attorney's negligent conversion of funds where several mitigating factors were present and attorney voluntarily closed his law practice); *Wechsler*, 854 P.2d at 223 (misrepresenting location of client's funds and failing to account for funds collected for over two years warrants suspension for one year and one day); *People v. Kearns*, 843 P.2d 1, 5 (Colo.1992) (finding suspension for one year and one day appropriate where attorney made misrepresentations to client and engaged in dishonest assignment of promissory note but had no prior disciplinary record).

78. 982 P.2d 838, 839 (Colo.1999). The Supreme Court imposed the same sanction in *People v. Hanks*, 967 P.2d 144, 146 (Colo.1998), where the respondent willfully failed to pay court-ordered child support, knowingly disobeyed an obligation under the rules of a tribunal, engaged in conduct prejudicial to the administration of justice, and engaged in conduct adversely reflecting on his fitness to practice law. Like *Green*, *Hanks* is distinguishable on the facts, since Hanks' conduct was more egregious than here, as he was over $55,000.00 behind in payments. *Id.* at 145.

79. 982 P.2d at 838.

80. 837 P.2d 1225, 1229 (Colo.1992).

81. *Id.* at 1226–27.

82. Ex. 4. It appears that the $3,167.13 arrearage included $1,500.00 in missed spousal maintenance payments.

83. *See also People v. Cantrell*, 900 P.2d 126, 128 (Colo.1995) (recognizing that a willful failure to pay child support warrants a short suspension but finding public censure an appropriate sanction for failure to pay child support where the attorney was negligent, had a cooperative attitude, and settled a support issue with his exwife); *People v. Primavera*, 904 P.2d 883, 885 (Colo.1995) (recognizing presumption of a short period of suspension for failure to pay child support but finding public censure appropriate where attorney failed to pay child support over only a four-month period and paid support in full by court-ordered contempt deadline). Although these cases impose a lighter sanction, they are distinguishable on the facts. In *Primavera*, the attorney's failure to pay child support extended only over a four-month period, was paid in full by a court-ordered deadline, and the contempt citation was dismissed. *Id.* at 885. Similarly, in *Cantrell*, the contempt citations against the attorney were dismissed because he was able to settle the child support issue with his former wife. 900 P.2d at 128.

We are also aware of the Supreme Court's directive that we must carefully apply the aggravating and mitigating factors in each case.[84] Here, we are mindful of Respondent's full payment of his child support arrearage and balance owed to the Supreme Court, as well as his lack of any prior discipline. But we are troubled by Respondent's failure to cooperate and bad faith obstruction of the disciplinary process, which we consider an aggravating factor of significant weight. Accordingly, we find that a suspension for one year and one day, all but three months stayed, is the appropriate sanction in this matter. In addition, Respondent must seek reinstatement pursuant to C.R.C.P. 251.29(c). Upon reinstatement to the bar, Respondent must successfully complete a one-year period of probation with conditions.[85]

## V. *CONCLUSION*

The Hearing Board concludes Respondent's knowing failure to pay court-ordered child support is a violation of the Rules of Professional Conduct. We also find that Respondent negligently converted a client's $500.00 retainer, in violation of the rules, when he spent it on the day he deposited it without his client's consent. We further determine that Respondent's accounting system falls woefully short of the standards imposed by Colo. RPC 1.15(j). As such, we find it appropriate to suspend Respondent for one year and one day, all but three months stayed. In addition, Respondent must seek reinstatement pursuant to C.R.C.P. 251.29(c). Upon reinstatement to the bar, Respondent must successfully complete a one-year period of probation with conditions.

## VI. *ORDER*

The Hearing Board therefore ORDERS:

1. **JOHN A. MCNAMARA,** attorney registration number 19382, is hereby **SUSPENDED FOR ONE YEAR AND ONE DAY, ALL BUT THREE MONTHS STAYED.**

2. Respondent **SHALL** seek reinstatement pursuant to C.R.C.P. 251.29(c).

3. Upon reinstatement to the bar, Respondent **SHALL** successfully complete a **ONE–YEAR PERIOD OF PROBATION** subject to the following conditions:

 a. Commit no further violations of the Colorado Rules of Professional Conduct;

 b. Establish a relationship with an attorney mentor and regularly report to the People with respect to the development of that relationship. Respondent shall consult monthly with a peer mentor selected by the People in conjunction with Respondent for a one-year period. The mentoring is intended to assist Respondent in his transition to the active practice of law and to account for the significant stressors associated therewith. The monthly mentoring shall continue for one year unless the peer mentor and the People jointly determine that such mentoring is no longer required or can be modified or reduced. Respondent shall execute an authorization for release, requiring the mentor to notify the People if Respondent fails to participate in this required mentoring;

 c. Submit to financial monitoring of accounting procedures for a one-year period. Respondent shall demonstrate that he has developed a system of law office management and monitoring which minimizes the possibility of the recurrence of the type of conduct which resulted in these proceedings;

 d. Provide monthly certification to the People by Respondent demonstrating full compliance with his court-ordered child support obligations;

---

84. *In re Fischer,* 89 P.3d at 822 (finding that a hearing board overemphasized a presumption of disbarment and undervalued the importance of mitigating factors in determining the needs of the public).

85. The Hearing Board is requiring Respondent to seek reinstatement in this matter, which ensures Respondent must make a showing prior to reinstatement that he has been rehabilitated and is fit to practice law. C.R.C.P. 251.29(b). This showing will demonstrate his eligibility for probation pursuant to C.R.C.P. 251.7(a).

e. Demonstrate to the People either that he is current on his child support obligations or that he has negotiated a payment plan approved by the appropriate court and is current with his obligations under the plan; and

f. Attend and successfully pass the one-day ethics school and the one-half-day trust account school sponsored by the People.

4. The suspension **SHALL** become effective thirty-one (31) days from the date of this order upon the issuance of an "Order and Notice of Suspension" by the PDJ and in the absence of a stay pending appeal pursuant to C.R.C.P. 251.27(h).

5. Respondent **SHALL** file any post-hearing motion or application for stay pending appeal with the PDJ **on or be-fore Thursday, August 4, 2011.** No extensions of time will be granted.

6. Respondent **SHALL** pay the costs of these proceedings. The People shall submit a "Statement of Costs" within fifteen (15) days from the date of this order. Respondent shall have ten (10) days thereafter to submit a response.

7. Respondent **SHALL** pay the costs to the PDJ for photocopying his exhibits during the hearing within fifteen (15) days from the date of this order. The PDJ made a total of 894 copies for Respondent chargeable at 10¢ per page for a total of $89.40.